ORIGINAL SEALED



CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 DEC -4 AM 10: 07

DEPUTY CLERK_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES OF AMERICA
*ex rel.* JOHN DOE

    and

STATE OF ARKANSAS
*ex rel.* JOHN DOE

    and

STATE OF CALIFORNIA
*ex rel.* JOHN DOE

    and

STATE OF CONNECTICUT
*ex rel.* JOHN DOE

    and

STATE OF COLORADO
*ex rel.* JOHN DOE

    and

STATE OF DELAWARE
*ex rel.* JOHN DOE

    and

DISTRICT OF COLUMBIA
*ex rel.* JOHN DOE

    and

STATE OF FLORIDA
*ex rel.* JOHN DOE

    and

STATE OF GEORGIA
*ex rel.* JOHN DOE

    and

Civ. No.

**3-19CV-2865B**

**ORIGINAL COMPLAINT**
**UNDER FEDERAL AND STATE**
**FALSE CLAIM ACTS**

**FILED *IN CAMERA* AND**
**UNDER SEAL PURSUANT**
**TO 31 U.S.C. § 3730(b)(2)**

**DO NOT ENTER IN**
**PACER**

**DO NOT PUT IN PRESS**
**BOX**

STATE OF HAWAII                          :
*ex rel.* JOHN DOE                       :
                                         :
        and                              :
                                         :
STATE OF ILLINOIS                        :
*ex rel.* JOHN DOE                       :
                                         :
        and                              :
                                         :
STATE OF INDIANA                         :
*ex rel.* JOHN DOE                       :
                                         :
        and                              :
                                         :
STATE OF IOWA                            :
*ex rel.* JOHN DOE                       :
                                         :
and                                      :
                                         :
STATE OF LOUISIANA                       :
*ex rel.* JOHN DOE                       :       **ORIGINAL COMPLAINT**
                                         :       **UNDER FEDERAL AND STATE**
        and                              :       **FEDERAL AND STATE**
                                         :       **FALSE CLAIM ACTS**
STATE OF MARYLAND                        :
*ex rel.* JOHN DOE                       :       **FILED *IN CAMERA* AND**
                                         :       **UNDER SEAL PURSUANT**
        and                              :       **TO 31 U.S.C. § 3730(b)(2)**
                                         :
COMMONWEALTH OF MASSACHUSETTS            :       **DO NOT ENTER IN**
*ex rel.* JOHN DOE                       :       **PACER**
                                         :
        and                              :       **DO NOT PUT IN PRESS**
                                         :       **BOX**
STATE OF MICHIGAN                        :
*ex rel.* JOHN DOE                       :
                                         :
        and                              :
                                         :
STATE OF MINNESOTA                       :
*ex rel.* JOHN DOE                       :
                                         :
        and                              :
                                         :
STATE OF MONTANA                         :
*ex rel.* JOHN DOE                       :

|  | : |  |
| --- | --- | --- |
| and | : |  |
|  | : |  |
| STATE OF NEVADA | : |  |
| *ex rel.* JOHN DOE | : |  |
| and | : |  |
|  | : |  |
| STATE OF NEW HAMPSHIRE | : |  |
| *ex rel.* JOHN DOE | : |  |
|  | : |  |
| and | : |  |
|  | : | **ORIGINAL COMPLAINT** |
| STATE OF NEW JERSEY | : | **UNDER FEDERAL AND STATE** |
| *ex rel.* JOHN DOE | : | **FALSE CLAIM ACTS** |
|  | : |  |
| and | : |  |
|  | : | **FILED *IN CAMERA* AND** |
| STATE OF NEW MEXICO | : | **UNDER SEAL PURSUANT** |
| *ex rel.* JOHN DOE | : | **TO 31 U.S.C. § 3730(b)(2)** |
|  | : |  |
| and | : | **DO NOT ENTER IN** |
|  | : | **PACER** |
| STATE OF NEW YORK | : |  |
| *ex rel.* JOHN DOE | : | **DO NOT PUT IN** |
|  | : | **PRESS BOX** |
| and | : |  |
|  | : |  |
| STATE OF NORTH CAROLINA | : |  |
| *ex rel.* JOHN DOE | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| STATE OF OKLAHOMA | : |  |
| *ex rel.* JOHN DOE | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| STATE OF RHODE ISLAND | : |  |
| *ex rel.* JOHN DOE | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| STATE OF TENNESSEE | : |  |
| *ex rel.* JOHN DOE | : |  |
|  | : |  |
| and | : |  |
|  | : |  |

STATE OF TEXAS
*ex rel.* JOHN DOE

    and

STATE OF UTAH
*ex rel.* JOHN DOE

    and

STATE OF VERMONT
*ex rel.* JOHN DOE

    and

COMMONWEALTH OF VIRGINIA
*ex rel.* JOHN DOE

    and

STATE OF WASHINGTON
*ex rel.* JOHN DOE

    and

STATE OF WISCONSIN
*ex rel.* JOHN DOE

    and

DOE STATES 1-18
*ex rel.* JOHN DOE

**Plaintiffs**,

v.

DAVITA INC.

2000 16th Street,
Denver, Colorado 80202

    **SERVE ON REGISTERED AGENT:**
    Corporation Service Company,
    1900 W. Littleton Boulevard
    Littleton, CO 80120, United States

    and

**ORIGINAL COMPLAINT
UNDER FEDERAL AND STATE
FALSE CLAIM ACTS**

**FILED *IN CAMERA* AND
UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730(b)(2)**

**DO NOT ENTER IN
PACER**

**DO NOT PUT IN PRESS**

GENZYME CORPORATION

500 Kendall Street
Cambridge, MA 02142

      **SERVE ON REGISTERED AGENT:**
      The Prentice-Hall Corporation
      System, Inc.
      251 Little Falls Drive
      Wilmington, DE 19808

      and

SANOFI-AVENTIS U.S. LLC

55 Corporate Drive
Bridgewater Township, NJ 08807

      **SERVE ON REGISTERED AGENT:**
      Corporation Service Company
      251 Little Falls Drive
      Wilmington, DE 19808

      and

AMGEN INC.

1 Amgen Center Drive
Thousand Oaks, CA 91320

      **SERVE ON REGISTERED AGENT:**
      The Prentice-Hall Corporation
      System, Inc.
      251 Little Falls Drive
      Wilmington, DE 19808

      and

AMGEN USA INC.

1 Amgen Center Drive
Thousand Oaks, CA 91320

      **SERVE ON REGISTERED AGENT:**
      The Prentice-Hall Corporation
      System, Inc.

**ORIGINAL COMPLAINT
UNDER FEDERAL AND STATE
FALSE CLAIM ACTS**

**FILED *IN CAMERA* AND
UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730(b)(2)**

**DO NOT ENTER IN
PACER**

**DO NOT PUT IN PRESS
BOX**

251 Little Falls Drive                          :
Wilmington, DE 19808                            :
                                                :
FRESENIUS MEDICAL CARE                          :
    HOLDINGS, INC.          :
                                                :
920 Winter Street                               :
Waltham, MA 02451                               :
                                                :
    **SERVE ON REGISTERED AGENT:**   :
    CT Corporation System   :
    155 Federal Street, Ste. 700   :
    Boston, MA 02110        :   **ORIGINAL COMPLAINT**
                                                :   **UNDER FEDERAL AND STATE**
    and                     :   **FALSE CLAIM ACTS**
                                                :
FRESENIUS USA MARKETING, INC.                   :
                                                :   **FILED IN CAMERA AND**
920 Winter Street                               :   **UNDER SEAL PURSUANT**
Waltham, MA 02451                               :   **TO 31 U.S.C. § 3730(b)(2)**
                                                :
    **SERVE ON REGISTERED AGENT:**   :   **DO NOT ENTER IN**
    CT Corporation System   :   **PACER**
    155 Federal Street, Ste. 700   :
    Boston, MA 02110        :   **DO NOT PUT IN PRESS**
                                                :   **BOX**
            **Defendants.**   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION ................................................................2

II.     JURISDICTION AND VENUE ............................................................4

III.    PARTIES ...........................................................................................4

        A. Plaintiffs ......................................................................................4

        B. Relator ..........................................................................................5

        C. Defendants ...................................................................................6

IV.     THE LAW ..........................................................................................11

        A. Federal and State False Claim Statutes ......................................11

        B. The Federal and State Anti-Kickback Statutes ..........................12

        C. State Insurance Frauds Prevention Acts .....................................16

V.      THE MEDICAID PROGRAM AND OTHER FEDERAL
        PAYER PROGRAMS ........................................................................20

VI.     CHRONIC KIDNEY DISEASE AND END STAGE RENAL DISEASE ..........25

VII.    DEFENDANTS' WRONGFUL CONDUCT .......................................26

        A. Defendant Pharmaceutical Companies Paid Hundreds of Millions of Dollars of
           Kickbacks to DaVita in the Form of Improper Rebates and Discounts..........27

        B. Sanofi and Amgen Significantly Increased Rebates on Branded Drugs to Induce
           Brand Purchasing Instead of Less Expensive Generics...........................31

        C. Sanofi Improperly Conditioned Rebates for its Branded Drugs on DaVita's
           Exclusive Use of Sanofi's Authorized Generics................................32

        D. Defendant Pharmaceutical Companies Disguised Kickbacks To DaVita As
           Payments Through Their "Symphony" Educational Programs.................33

        E. Genzyme and Amgen Disguised Kickbacks To DaVita As Payments Through
           Their "Profiles" Patient Education Programs .....................................38

i

F.  Defendant Pharmaceutical Companies Disguised Kickbacks to DaVita as Payments for Prescription Data.…………………………...........................41

G.  Fresenius and DaVita Submitted Artificially-Inflated Costs to CMS……….42

VII.    DAMAGES.................................................................................................43

COUNT I: VIOLATIONS OF THE FALSE CLAIMS ACT ...........................................44

COUNT II: VIOLATIONS OF THE FALSE CLAIMS ACT ..........................................45

COUNT III: VIOLATIONS OF THE FALSE CLAIMS ACT ........................................47

PRAYER AS TO COUNTS I-III.......................................................................................48

COUNT IV: VIOLATIONS OF THE FEDERAL AND STATE ANTI-KICKBACK STATUTES........................................................................................................................49

PRAYER AS TO COUNT IV ...........................................................................................50

COUNT V: UNJUST ENRICHMENT..............................................................................51

PRAYER AS TO COUNT V..............................................................................................52

COUNT VI: VIOLATIONS OF THE ARKANSAS MEDICAID FCA ...........................52

PRAYER AS TO COUNT VI ...........................................................................................54

COUNT VII: VIOLATIONS OF THE CALIFORNIA FCA ...........................................55

PRAYER AS TO COUNT VII...........................................................................................56

COUNT VIII: VIOLATIONS OF THE CALIFORNIA INSURANCE FRAUDS PREVENTION ACT ..........................................................................................................57

PRAYER AS TO COUNT VIII..........................................................................................59

COUNT IX: VIOLATIONS OF THE COLORADO MEDICAID FCA ...........................60

PRAYER AS TO COUNT IX ...........................................................................................62

COUNT X: VIOLATIONS OF THE CONNECTICUT FCA FOR MEDICAL ASSISTANCE PROGRAMS .............................................................................................62

PRAYER AS TO COUNT X...............................................................................................64

COUNT XI: VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND
REPORTING ACT ........................................................................................................65

PRAYER AS TO COUNT XI ............................................................................................67

COUNT XII: VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT
REFORM AMENDMENT ACT .......................................................................................67

PRAYER AS TO COUNT XII ...........................................................................................69

COUNT XIII: VIOLATIONS OF THE FLORIDA FCA..................................................70

PRAYER AS TO COUNT XIII...........................................................................................72

COUNT XIV: VIOLATIONS OF THE GEORGIA STATE FALSE MEDICAID
CLAIMS ACT ...............................................................................................................72

PRAYER AS TO COUNT XIV ..........................................................................................74

COUNT XV: VIOLATIONS OF THE HAWAII FCA......................................................75

PRAYER AS TO COUNT XV............................................................................................76

COUNT XVI: VIOLATIONS OF THE ILLINOIS FCA..................................................77

PRAYER AS TO COUNT XVI ..........................................................................................79

COUNT XVII: VIOLATIONS OF THE ILLINOIS INSURANCE CLAIMS FRAUD
PREVENTION ACT .......................................................................................................80

PRAYER AS TO COUNT XVII ........................................................................................82

COUNT XVIII: VIOLATIONS OF THE INDIANA FALSE CLAIMS AND
WHISTLEBLOWER PROTECTION ACT ......................................................................83

PRAYER AS TO COUNT XVIII.......................................................................................84

COUNT XIX: VIOLATIONS OF THE IOWA FCA.......................................................85

PRAYER AS TO COUNT XIX .........................................................................................87

COUNT XX: VIOLATIONS OF THE LOUISIANA MEDICAL ASSISTANCE
PROGRAMS INTEGRITY LAW .....................................................................................88

PRAYER AS TO COUNT XX...........................................................................................89

COUNT XXI: VIOLATIONS OF THE MARYLAND FALSE HEALTH CLAIMS ACT ............................................................................................90

PRAYER AS TO COUNT XXI .....................................................................92

COUNT XXII: VIOLATIONS OF THE MASSACHUSETTS FCA ...............93

PRAYER AS TO COUNT XXII ....................................................................94

COUNT XXIII: VIOLATIONS OF THE MICHIGAN MEDICAID FCA......................95

PRAYER AS TO COUNT XXIII....................................................................97

COUNT XXIV: VIOLATIONS OF THE MINNESOTA FCA .......................98

PRAYER AS TO COUNT XXIV....................................................................100

COUNT XXV: VIOLATIONS OF THE MONTANA FCA............................100

PRAYER AS TO COUNT XXV .....................................................................102

COUNT XXVI: VIOLATIONS OF THE NEVADA FCA.............................103

PRAYER AS TO COUNT XXVI....................................................................105

COUNT XXVII: VIOLATIONS OF THE NEW HAMPSHIRE FCA ...........106

PRAYER AS TO COUNT XXVII ..................................................................108

COUNT XXVIII: VIOLATIONS OF THE NEW JERSEY FCA....................109

PRAYER AS TO COUNT XXVIII.................................................................110

COUNT XXIX: VIOLATIONS OF THE NEW MEXICO MEDICAID FCA...............111

PRAYER AS TO COUNT XXIX....................................................................113

COUNT XXX: VIOLATIONS OF THE NEW YORK FCA...........................114

PRAYER AS TO COUNT XXX .....................................................................116

COUNT XXXI: VIOLATIONS OF THE NORTH CAROLINA FCA ...........116

PRAYER AS TO COUNT XXXI....................................................................118

iv

COUNT XXXII: VIOLATIONS OF THE OKLAHOMA MEDICAID FCA .................119

PRAYER AS TO COUNT XXXII ..................................................................121

COUNT XXXIII: VIOLATIONS OF THE RHODE ISLAND STATE FCA .................122

PRAYER AS TO COUNT XXXIII..................................................................124

COUNT XXXIV: VIOLATIONS OF THE TENNESSEE MEDICAID FCA ...............124

PRAYER AS TO COUNT XXXIV..................................................................126

COUNT XXXV: VIOLATIONS OF THE TEXAS MEDICAID FRAUD
PREVENTION LAW ..................................................................................127

PRAYER AS TO COUNT XXXV ..................................................................129

COUNT XXXVI: VIOLATIONS OF THE UTAH FCA..................................130

PRAYER AS TO COUNT XXXVI..................................................................133

COUNT XXXVII: VIOLATIONS OF THE VERMONT FCA.......................134

PRAYER AS TO COUNT XXXVII ................................................................136

COUNT XXXVIII: VIOLATIONS OF THE VIRGINIA FRAUD AGAINST
TAXPAYERS LAW....................................................................................137

PRAYER AS TO COUNT XXXVIII ..............................................................138

COUNT XXXIX: VIOLATIONS OF THE WASHINGTON STATE MEDICAID
FRAUD FCA ..........................................................................................139

PRAYER AS TO COUNT XXXIX..................................................................141

COUNT XXXX: VIOLATIONS OF THE WISCONSIN FALSE CLAIMS FOR
MEDICAL ASSISTANCE ACT ....................................................................142

PRAYER AS TO COUNT XXXX ..................................................................143

DEMAND FOR JURY TRIAL ......................................................................144

## ORIGINAL COMPLAINT

**COMES NOW**, through the undersigned counsel, Relator John Doe, on behalf of himself, the United States of America ("United States"), and the States of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and Wisconsin, the Commonwealths of Massachusetts and Virginia, the District of Columbia, and Doe States 1-18, and brings this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), and similar State laws to recover monetary damages, civil penalties, and all other remedies for violations of the Federal and State health care programs, including, but not limited to, Medicare, Medicaid, the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS/TRICARE"), the Veterans Administration ("CHAMPVA"), and the Federal Employees Health Benefits Program ("FEHBP"), (collectively, "the Payer Programs"), related to the submission of false and fraudulent claims as the result of, *inter alia*, illegal kickback schemes that purposefully targeted increased utilization of prescription drugs amongst DaVita Inc.'s patients.  Relator also brings this action on behalf of himself and the States of California and Illinois to recovery statutory damages, civil penalties and other monetary relief for violations of the California Insurance Frauds Prevention Act, CAL. INS. CODE § 1871 *et seq.*, and the Illinois Insurance Claims Fraud Prevention Act, 740 ILL. COMP. STAT. ANN. § 92/1 *et seq.*, related to the submission of false and fraudulent claims to private insurers.

Relator hereby alleges as follows:

1

## I.    NATURE OF THE ACTION

1.    This is a *qui tam* action under the Federal and State False Claims Acts, the California Insurance Frauds Prevention Act, and the Illinois Insurance Claims Fraud Prevention Act.  The False Claims Act was enacted in 1863 in response to "widespread corruption and fraud in the sales of supplies and provisions to the union government during the Civil War."  132 CONG. REC. H9382-03 (daily ed. Oct. 7, 1986) (statement of Rep. Glickman).  The law allows a private person with knowledge of a fraud to bring an action in federal district court for himself and for the United States and States and to share in any recovery. The party is known as a Relator, and the action that a Relator brings is called a *qui tam*.

2.    Relator alleges in this *qui tam* that Defendants knowingly made and/or caused to be made false statements and claims to the United States, the States, and private payers pertaining to reimbursements for prescription drugs manufactured for the treatment of kidney disease.   These false statements and claims are the result of Defendant Pharmaceutical Companies[1] offering and paying Defendant DaVita Inc. and its wholly-owned subsidiary, DaVita Rx, LLC, (collectively, "DaVita") illegal remuneration through written agreements that facially violate the FCA or disguised as sham deals that shared the same unlawful objective:  inducing and incentivizing DaVita to increase the prescribing and dispensing of Defendant Pharmaceutical Companies' prescription drugs to DaVita patients.    These illegal schemes include, but are not limited to: (1) Defendant Pharmaceutical Companies offering and paying to Defendant DaVita kickbacks in the form

---

[1] "Defendant Pharmaceutical Companies" consist of Genzyme Corporation, Sanofi-Aventis U.S. LLC, Amgen Inc., Amgen USA Inc., Fresenius USA Marketing, Inc., Fresenius Medical Care Holdings, Inc., and their affiliates listed, *infra*, § III.C.

of unlawful rebates and other monetary incentives that steered DaVita patients to Defendant Pharmaceutical Companies' prescription drugs; (2) Defendant Pharmaceutical Companies offering and paying to Defendant DaVita kickbacks in the form of unlawful rebates and other incentives (*e.g.*, most favored nations pricing reductions) that tied and conditioned DaVita's purchase of expensive brand prescription drugs to exclusive selling arrangements for generic drugs; (3) Defendant Pharmaceutical Companies offering and paying to Defendant DaVita illegal remuneration for patient data, including setting up elaborate "pay-for-play" schemes disguised as "educational" or "patient adherence" programs designed to lock in and prolong prescription and patient retention; and (4) Defendants Fresenius Medical Care Holdings, Inc. and DaVita engaging in reciprocal fraudulent financial transactions and false cost reporting by selling products or services to each other at inflated prices in order to create fictitious net-positive revenue from the artificially inflated transactions, while receiving reimbursement from government programs for the inflated payments. By orchestrating these illegal schemes, Defendants violated Federal and State laws. As a result of Defendant DaVita and Defendant Pharmaceutical Companies' (collectively, "Defendants") fraudulent course of conduct, as alleged herein, the United States, the States, private insurers, and DaVita patients have been substantially damaged.

3.     This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). It will not be served on Defendants until the Court so orders. A disclosure of substantially all material evidence and information Relator possesses has been served on the Attorney General of the United States and the United States Attorney for the Northern District of Texas under 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4.

3

## II.    JURISDICTION AND VENUE

4.    This Court possesses subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3730 and 3732 because Relator seeks remedies on behalf of the United States for Defendants' violations of 31 U.S.C. § 3729.

5.    This Court has pendent jurisdiction over the State claims pursuant to 31 U.S.C. § 3732(b), 31 U.S.C. § 3730(e), and 28 U.S.C. § 1367.

6.    This Complaint has been timely filed within the period prescribed by 31 U.S.C. § 3731(b).  The allegations and transactions set forth in this Complaint have not been publicly disclosed prior to filing, in accordance with 31 U.S.C. § 3730(e).

7.    At all times material to this Complaint, all of the Defendants regularly conducted substantial business within the State of Texas.  Further, Defendants maintained permanent employees and offices in the State of Texas.  Defendants also committed the acts proscribed by the False Claims Act in Texas, among other States.  Defendants are thus subject to personal jurisdiction in Texas.

8.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c) because the Defendants conduct business and/or are qualified to do business in this District.

## III.   PARTIES

### A. Plaintiffs

9.    Plaintiff United States of America brings this action by and through its administrative agency, the United States Department of Health and Human Services,

4

Centers for Medicare & Medicaid Services ("CMS"), which is responsible for the administration of all Federal health care programs.

10.     The States of Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and Wisconsin, the Commonwealths of Massachusetts and Virginia, and the District of Columbia are named as Plaintiffs pursuant to the Court's pendent jurisdiction under 31 U.S.C. § 3732(b) with respect to the related States' false claim statutes.

11.     The States of California and Illinois are named as Plaintiffs pursuant to the Court's pendent jurisdiction under 31 U.S.C. § 3732(b) with respect to the related States' false claim statutes, and/or the Court's supplemental jurisdiction under 28 U.S.C. § 1367 with respect to the related claims brought for violations of the California Insurance Frauds Prevention Act and the Illinois Insurance Claims Fraud Prevention Act.

12.     Additionally, Plaintiff Doe States 1-18 include Alabama, Alaska, Arizona, Idaho, Kansas, Kentucky, Maine, Mississippi, Missouri, Nebraska, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, South Dakota, West Virginia, and Wyoming. Doe States 1-18 include those that enact false claims act statutes with *qui tam* provisions subsequent to the filing of this Complaint.

**B. Relator**

13.     Relator John Doe is a former employee of DaVita Rx, LLC. By virtue of Relator's position and responsibilities with DaVita Rx, LLC, Relator became aware of Defendants' fraudulent conduct, as alleged herein. Pursuant to 31 U.S.C. § 3730(e)(4)(B), Relator is the "original source" of the information provided herein regarding Defendants'

5

illegal conduct in violation of Federal and State law.  Relator has direct and independent knowledge of the allegations set forth herein.  Relator states that the information concerning Defendants' misconduct was not disclosed publicly prior to Relator's disclosure to the United States, the States, and private payers.

### C. Defendants

14.    Defendant DaVita Inc.[2] is organized under the laws of Delaware with headquarters located at 2000 16th Street, Denver, Colorado 80202.  It may be served through its registered agent, Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120.  At all times material to this Complaint, DaVita Inc. provided treatment services—primarily dialysis—for patients with Chronic Kidney Disease ("CKD") and End Stage Renal Disease ("ESRD").    Those services included pharmaceutical services through its wholly-owned subsidiary, DaVita Rx, LLC, which ceased operations in late 2018. DaVita Inc. earned more than $11.4 billion in consolidated revenues in 2018.    *See* DaVita Inc. 2018 Annual Report at p.93, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/927066/000092706619000025/dva-123118x10k.htm (last accessed on Dec. 3, 2019).  Approximately 90% of DaVita Inc.'s consolidated revenue came from dialysis and related lab patient services. *Id.* at p.5.  DaVita Inc. fully operates or staffs 2,664 outpatient dialysis centers in 46 states and the District of Columbia that serve roughly 202,700 patients with CKD and ESRD. *Id.* at p.75.  DaVita Inc. additionally operates 241 outpatient dialysis clinics outside of the United States and provides services at more than 900 inpatient hospitals in the United States. *Id.*  These

---

[2] DaVita Inc. operated under the name "DaVita Healthcare Partners Inc." from May 2012 to September 2016.

6

figures establish DaVita Inc. as the second largest kidney dialysis provider in the United States, only trailing Co-Defendant Fresenius Medical Care North America.

15.     DaVita Inc. also served as the parent company of its wholly-owned subsidiary, DaVita Rx, LLC ("DaVita Rx"), which was organized under the laws of Delaware with headquarters at 1234 Lakeshore Drive, Suite 200, Coppell, TX 75019. DaVita Rx is not a defendant in this *qui tam* because the company was shut down in late 2018.   Nonetheless, DaVita Rx played a central role as a pharmacy in the fraudulent schemes alleged herein.  As described by DaVita Inc. in its 10-K filing from 2012, "DaVita Rx is a pharmacy that provides oral medications to DaVita's patients with ESRD.  The main objectives of the pharmacy are to improve clinical outcomes by facilitating increased patient compliance and to provide our patients a convenient way to fill their prescription needs by delivering the prescriptions to the center where they are treated."   DaVita Healthcare Partners Inc. 2012 Form 10-K at p.30, available at https://investors.davita.com/ static-files/eb392d0c-3971-4059-9c72-a4ca4d7be42f (last accessed on Dec. 3, 2019).  At its peak, DaVita Rx filled and shipped prescriptions to over 50,000patients.  DaVita Rx dispensed 100% of its prescriptions to DaVita Inc. patients, which accounted for the majority of prescriptions filled by DaVita Inc. patients.   In addition to dispensing prescriptions to DaVita Inc., in 2013 DaVita Rx began providing logistics services to Defendant Fresenius Medical Care Holdings, Inc. for its health care business.  *Id.*

16.     Defendant Genzyme Corporation ("Genzyme") is a subsidiary of Sanofi S.A., which is the seventh largest global pharmaceutical company by market share, with net revenue of $39.23 billion in 2018.  *See* Sanofi 2018 Annual Report at p.2, available at https://www.sanofi.com/-/media/Project/One-Sanofi-Web/Websites/Global/Sanofi-COM/

Home/common/docs/investors/Sanofi-20-F-2018-EN-PDF-e-accessible_01.pdf?la=en& hash=6AC303E769D68FF95508C93D1CBF6F1A (last accessed on Dec. 3, 2019). Genzyme is organized under the laws of Delaware with headquarters located at 500 Kendall Street Cambridge, MA 02142. It may be served through its registered agent, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808. Sanofi S.A. acquired Genzyme in April 2011 largely to acquire its Sevelamer phosphate binder franchise, branded as Renagel or Renvela (sevelamer hydrochloride and carbonate, respectively). These drugs help treat hyperphosphatemia, or an elevated level of phosphate in the blood, which is common among people with CKD. In addition, Sanofi S.A. also acquired Genzyme's Hectorol, which is a drug used to treat secondary hyperthyroidism in patients with late-stage CKD who are undergoing dialysis.

17.     Defendant Sanofi-Aventis U.S. LLC ("Sanofi") is a subsidiary of Sanofi S.A. After Sanofi S.A. acquired Defendant Genzyme in 2011, Sanofi eventually replaced Genzyme as the signature party for written agreements with DaVita, including those involving Renagel, Renvela and Hectorol. Sanofi is organized under the laws of Delaware with headquarters located at 55 Corporate Drive, Bridgewater Township, NJ 08807. It may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. Sanofi also took over manufacturing Renagel, Renvela, and Hectorol from Genzyme. Renagel/Renvela is Sanofi's fifth largest product and accounts for 6% of all U.S. sales, roughly $1 billion a year. Based primarily on their Renagel/Renvela sales, Sanofi has a 55% market share of phosphate binders. Renagel/Renvela's biggest competitor is generic Calcium Acetate, which maintained 30% of the market as of 2017.

8

18.     Defendant Amgen Inc. is one of the largest pharmaceutical companies in the world, with total revenue of $23.7 billion in 2018. *See* Amgen Inc. 2018 Letter to Shareholders at p.2, available at http://investors.amgen.com/static-files/e3bd5ffc-957d-4dac-a8b4-5ed9a9a34e94 (last accessed on Dec. 3, 2019).   Amgen Inc. (NASDAQ: AMGN) is a Delaware-registered corporation with headquarters located at 1 Amgen Center Drive, Thousand Oaks, CA 91320.   It may be served through its registered agent, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808. Amgen Inc. manufactures Sensipar, for which it received FDA approval in March 2004 for the treatment of secondary hyperparathyroidism, which occurs as a result of CKD. Sensipar accounted for $1.37 billion in U.S. sales for Amgen Inc. in 2017.   *See* Amgen Inc. 2017 Annual Report at p.48, available at http://investors.amgen.com/static-files/173cab60-bcea-4aa2-8fb5-b09d86f9d1ba (last accessed on Dec. 3, 2019).   The FDA approved a similar drug manufactured by Amgen Inc. called Parsabiv in February 2017 for the treatment of secondary hyperparathyroidism. *Id.* at p.44.

19.     In several instances, Amgen Inc. conducted business with DaVita through its wholly-owned subsidiary Defendant Amgen USA Inc. (collectively, "Amgen"). Amgen USA Inc. is a Delaware-registered corporation with headquarters located at 1 Amgen Center Drive, Thousand Oaks, CA 91320.   It may be served through its registered agent, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808.

20.     Defendant Fresenius Medical Care Holdings, Inc. ("FMCH"), a New York holding corporation, is a subsidiary of Fresenius Medical Care AG & Co. KGaA ("FMC"), a German partnership limited by shares.   "Fresenius Medical Care holds the leading

position worldwide in dialysis care" and treats roughly 38% of all dialysis patients in the U.S. *See* Fresenius Medical Care 2018 Annual Report at pp.21-22, available at https://www.freseniusmedicalcare.com/fileadmin/data/com/pdf/Media_Center/Publicatio ns/Annual_Reports/FME_Annual-Report_2018.pdf (last accessed on Dec. 3, 2019). FMCH primarily conducted business with DaVita through its subsidiary, Defendant Fresenius USA Marketing, Inc. FMCH is organized under the laws of New York, and Fresenius USA Marketing, Inc. is organized under the laws of Delaware. Both companies (collectively, "Fresenius") are headquartered at 920 Winter Street, Waltham, MA 02451. They may be served through their registered agent, CT Corporation System, 155 Federal Street, Ste. 700, Boston, MA, 02110. Though FMC settled concurrent SEC and DOJ Foreign Corrupt Practices Act charges in March 2019 for its conduct abroad, approximately 70% of FMC's revenue comes from its operations in North America. *See* Fresenius Medical Care Operating Figures, available at https://www.freseniusmedicalcare.com/ en/investors/operating-figures/ (last accessed on Dec. 3, 2019). Fresenius manufactures a phosphate binder called Velphoro, which is a direct competitor to Sanofi's Renagel and Renvela. A Swiss-based pharmaceutical company, Vifor Pharma, produces the active ingredient (sucroferric oxyhydroxide) that is added into Velphoro tablets sold in the United States. Velphoro netted U.S. sales of approximately $70 million in 2018. *See* Vifor Pharma 2018 Annual Report at p.26, available at http://www.viforpharma.com/~/ media/Files/V/Vifor-Pharma/documents/en/investors/corporate-reports/2018/annual-report-2018-en-web.pdf (last accessed on Dec. 3, 2019).

## IV.   THE LAW

### A. Federal and State False Claim Statutes.

21.     The False Claims Act, 31 U.S.C. §§ 3729-3733, provides, *inter alia*, that any person who (1) knowingly presents, or causes to be presented, to the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim made to the United States; or (3) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States for a civil money penalty, plus treble damages. 31 U.S.C. § 3729(a)(1)(A)-(B), (G).

22.     The False Claims Act also provides that any person who conspires to violate any provision of the Act is liable to the United States for a civil money penalty, plus treble damages. 31 U.S.C. § 3729(a)(1)(C).

23.     The terms "knowing" and "knowingly" are defined to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §§ 3729(b)(1)(A)(i)-(iii). These terms "require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B).

24.     The term "claim" is defined to mean "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is made to a contractor, grantee, or other recipient, if the money or

11

property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (a) provides or has provided any portion of the money or property requested or demanded; or (b) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . ." 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

25.     The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.   31 U.S.C. § 3729(b)(4).

26.     The States have enacted false claims statutes, the provisions of which substantially mirror the Federal FCA provided in the preceding paragraphs.  Relator asserts claims under the statutes enacted by the States for the State portion of Medicaid false claims as stated herein.

27.     As discussed herein, the illegal schemes orchestrated by Defendant Pharmaceutical Companies and DaVita violated (or revealed the Defendants' conspiracy to violate) the FCA.  In fact, a violation of the Federal Anti-Kickback Statute is a *per se* violation of the FCA.

### B. The Federal and State Anti-Kickback Statutes

28.     The Federal Anti-Kickback Statute ("AKS"), *see* 42 U.S.C. § 1320a-7b, expressly prohibits any person or entity from offering, making or accepting payment to induce or reward any person for referring, recommending or arranging for Federally-funded medical items or services, including items or services provided under Medicare or Medicaid.

29.     Section 1128A(a)(5) of the Social Security Act prohibits a person or entity from offering remuneration to another person or entity with the intention of inducing the

referral of business that is paid for by a Federal health care program in whole or in part. The Medicare and Medicaid Patient Protection Act of 1987, 42 U.S.C. § 1320a-7b, provides criminal penalties of no more than $25,000 or five years in jail or both for the following:

> (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
>
>> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program ... .
>
> * * *
>
> (2) whoever knowingly and willfully offers and pays any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
>> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.

30.     A "Federal health care program" is defined in 42 U.S.C. § 1320a-7b(f) as any plan or program providing health benefits funded, whether directly or indirectly, by the United States Government.

31.     In 2010, Congress clarified the *scienter* standard under the AKS by adding the following language to the statute: "With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section." 42 U.S.C. § 1320a-7b(h).

32.     A kickback in violation of the Anti-Kickback Statute violates the FCA. The Patient Protection and Affordability Care Act ("PPACA"), Pub. L. No.121-148, 124 Stat. 119 (H.R. 3590), which was signed into law on March 23, 2010, specifically makes a

13

violation of the Anti-Kickback Statute actionable under the FCA. PPACA amended the Anti-Kickback Statute to provide that a "claim that includes items or services resulting from a violation [of the Anti-Kickback Statute] constitutes a false or fraudulent claim" under FCA. H.R. 3590, § 64020(1).

33.     The States have enacted anti-kickback statutes, the provisions of which mirror the Federal AKS. Relator also asserts claims under these State anti-kickback laws.

34.     Federal regulations identify narrow "safe harbors" from Anti-Kickback Statute liability. There are 11 statutory safe harbor provisions, 42 U.S.C. §§ 1320a-7b(b)(3)(A)-(K), and 28 regulatory safe harbors, 42 C.F.R. §§ 1001.952(a)-(bb).

35.     No safe harbor applies to the conduct alleged herein. In fact, as early as 1994, the Federal Government gave notice to pharmaceutical companies and pharmacies that they could be in violation of the AKS if the pharmaceutical company were to offer financial benefits to a pharmacy in exchange for recommending to physicians that they move patients from one prescription drug to another prescription drug. *See* Publication of OIG Special Fraud Alerts, 59 Fed. Reg. 65,372, 65,376 (Dec. 19, 1994).

36.     Since the OIG issued its guidance about "product conversion" in 1994, it has repeatedly criticized arrangements where a party is compensated for promoting a particular drug. *See* OFFICE OF INSPECTOR GENERAL, DEPARTMENT OF HEALTH AND HUMAN SERVICES, OIG Advisory Opinion 98-2 (Apr. 8, 1998) ("OIG Advisory Opinion 98-2"); Clarification of the Initial OIG Safe Harbors and Establishment of Additional Safe Harbors under the AKS, 64 Fed. Reg. 63528 (Nov. 19, 1999). Notably, in OIG Advisory 98-2 the OIG again noted its long-time concern with compensation based on a percentage of product sold or marketing activities, as it can "encourage overutilization or the

inappropriate steering of Federal health care program business." OIG Advisory Opinion 98-2 at 8.

37.    When addressing the discount safe harbor in particular, the United States has clarified its position on payments made to pharmacies. In a Statement of Interest filed in *United States ex rel. Banigan et al. v. Organon USA Inc., et al.*, a prescription drugs case involving alleged illegal rebates, the Department of Justice stated: "Payments to pharmacies for switching patients from one drug to another, and for other efforts to increase a drug's utilization do not qualify as protected price reductions" for purposes of the discount safe harbor or the statutory discount exception. Statement of Interest on Behalf of the United States in Resp. to Defs.' Mots. to Dismiss at 6–9, No. 07-cv-12153 (D. Mass. Sept. 30, 2010).

38.    The AKS discount safe harbor also states that for a discount to qualify for safe harbor protection, the buyers and sellers must comply with 42 C.F.R. § 1001.952(h)(1)-(2) by fully and accurately reporting the discount to the government payor programs. Here, DaVita (as buyer) and Defendant Pharmaceutical Companies (as sellers) did not disclose the underlying terms of the agreement, in that the discounts were in exchange for steering doctors working at DaVita facilities toward Defendant Pharmaceutical Companies' prescription drugs.

39.    Further, as fully alleged in this Complaint, Sanofi and DaVita agreed to condition the sale of their prescription drug based on the exclusivity of Sanofi's generic drug. But the safe harbors do not allow "tying" or "bundling" arrangements. The definition of the term "discount" in the safe harbor is "a reduction in the amount a buyer…is charged for an item or service based on an arms-length transaction." 42 C.F.R. § 1001.952(h)(5).

But under 42 C.F.R. § 1001.952(h)(5)(ii), the safe harbor explicitly disqualifies the tying agreements between Sanofi and DaVita where the remuneration was tied to the exclusive sale of Sanofi's authorized generic at an increased price:

> The term discount does not include -
>
> (ii)    [s]upplying one good or service without charge or at a reduced charge to induce the purchase of a different good or service, unless the goods and services are reimbursed by the same Federal health care program using the same methodology and the reduced charge is fully disclosed to the Federal health care program and accurately reflected where appropriate, and as appropriate, to the reimbursement methodology.

40.    The OIG reaffirmed their position on discounts and bundling in an Advisory Opinion: "[w]e have expressed concerns about discounts on bundled items for multiple reasons. Such discounts can shift costs among reimbursement systems and distort the true cost of items." OIG Advisory Opinion No. 13-07 (June 24, 2013) (citing 64 Fed. Reg. 63,518, 63,530 (Nov. 19, 1999)). In accordance, the agreements whereby Sanofi offered DaVita better pricing on a brand drug in exchange for DaVita exclusively selling its authorized generic—thereby denying government beneficiaries access to fairly-priced generic medication from other manufacturers—absolutely fails to qualify for the discount safe harbor.

### C. State Insurance Frauds Prevention Acts

41.    The California Insurance Frauds Prevention Act ("CIFPA"), Cal. Ins. Code § 1871 *et seq.* and the Illinois Insurance Claims Fraud Prevention Act ("IICFPA"), 740 Ill. Comp. Stat. Ann. § 92 *et seq.* are statutes designed to root out and put a stop to fraudulent activities in the insurance arena. Both statutes contain a *qui tam* provision, similar to that contained in the Federal and various State False Claims Acts. The statutes are premised

on the idea that the costs of insurance fraud are ultimately passed on to consumers in the form of increased premiums, and the *qui tam* provisions are designed to promote more effective investigation, discovery, and prosecution of insurance frauds. *See* CAL. INS. CODE § 1871(a). The California statute explicitly references health care fraud as one of the areas the statute is intended to target, finding that "[h]ealth care fraud causes losses in premium dollars and increases health care costs unnecessarily." *Id.* at § 1871(h).

42.    Defendants' fraudulent schemes as alleged by Relator herein violate the CIFPA and the IICFPA for claims submitted to private insurers.

43.    **California Insurance Frauds Prevention Act**.    CIFPA creates civil liability for "[e]very person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation, as defined in Section 3207 of the Labor Code or pursuant to a contract of insurance." CAL. INS. CODE § 1871(b).

44.    CAL. INS. CODE Section 1871.7(a) provides that "[i]t is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients or to perform or obtain services or benefits pursuant to Division 4… of the Labor Code or to procure clients or patients to perform or obtain services under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer."

45.    CAL. PENAL CODE § 550(b) states:

It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1)    Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(2)    Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3)    Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

(4)    Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact, that person resides or is domiciled in a state other than this state.

46.    The statute contains a *qui tam* provision that states "[a]ny interested person, including an insurer, may bring a civil action for violation of this section for the person and for the State of California…" CAL. INS. CODE § 1871.7(e)(1).

47.    **Illinois Insurance Claims Fraud Prevention Act**.   IICFPA states "[a] person who violates any provision of this Act, Section 17-8.5 or Section 10.5 of the Criminal Code of 1961 or the Criminal Code of 2012, or Article 46 of the Criminal Code of 1961 shall be subject… to a civil penalty…"). 740 ILL. COMP. STAT ANN. § 92/5(b).

48.    Section 92/5 states "it is unlawful to knowingly offer or pay any remuneration directly or indirectly, in cash or in kind, to induce any person to procure

18

clients or patients to obtain services or benefits under a contract or insurance or that will be the basis for a claim against an insured person or the person's insurer...". 740 ILL. COMP. STAT ANN. § 92/5.

49.   ILL. CRIM. CODE § 17-10.5(a) states:

   (1)   A person commits insurance fraud when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company or by the making of a false claim or by causing a false claim to be made to a self-insured entity, intending to deprive an insurance company or self-insured entity permanently of the use and benefit of that property.

   (2)   A person commits health care benefits fraud against a provider, other than a governmental unit or agency, when he or she knowingly obtains or attempts to obtain, by deception, health care benefits and that obtaining or attempt to obtain health care benefits does not involve control over property of the provider.

50.   "Deception," as further defined by statute, means knowingly to:

   (1)   Create or confirm another's impression which is false and which the offender does not believe to be true; or

   (2)   Fail to correct a false impression which the offender previously has created or confirmed; or

   (3)   Prevent another from acquiring information pertinent to the disposition of the property involved; or

   (4)   Sell or otherwise transfer or encumber property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, or is or is not a matter of official record; or

(5)    Promise performance which the offender does not
intend to perform or knows will not be performed.

720 ILL. COMP. STAT. ANN. § 5/15-4.

51.    Under the IICFPA, "[a]n interested person, including an insurer, may bring

a civil action for a violation of this Act for the person and for the State of Illinois...." 740

ILL. COMP. STAT ANN. § 92/15(a).

## V.    THE MEDICARE AND MEDICAID PROGRAMS AND OTHER FEDERAL PAYER PROGRAMS

52.    Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, establishes

the Health Insurance for the Aged and Disabled Program ("Medicare"). The Secretary of

the United States Department of Health and Human Services ("HHS") administers

Medicare through the Centers for Medicare and Medicaid Services ("CMS").

53.    The Medicare program is composed of several parts. Medicare Part B is a

federally subsidized, voluntary insurance program that covers certain non-hospital medical

services and products. 42 U.S.C. §§ 1395(k), 1395(l), 1395(s). Medicare Part D was added

to the Medicare laws in 2003 with the Medicare Prescription Drug, Improvement and

Modernization Act. 42 U.S.C. § 1395w (effective 2006). Medicare Part D provides

voluntary prescription drug benefits for qualified seniors and disabled persons.

54.    Medicare Part B has exceptionally expansive coverage for people with

kidney health issues, including coverage for most dialysis medications. In 1972, Medicare

benefits were extended to cover the high cost of medical care for most individuals suffering

from ESRD. Kidney failure is one of only two medical conditions that gives people the

option to enroll in Medicare without a two-year waiting period, regardless of age.

55.    According to CMS, if an individual has "worked the required amount of

time under Social Security, the Railroad Retirement Board (RRB), or as a government

20

employee [or the individual is] already getting or [is] eligible for Social Security or RRB benefits [or the individual is] the spouse or dependent child of a person who meets either of the requirements above" then "you can get Medicare no matter how old you are if your kidneys no longer work, you need regular dialysis or have had a kidney transplant." CMS Official Government Booklet, Medicare Coverage of Kidney Dialysis & Kidney Transplant Services, § 1: Medicare Basics. "Medicare Part B covers transplant drugs after a covered transplant, and most of the drugs you get for dialysis ... Medicare offers prescription drug coverage (Part D) to help you with the costs of your drugs not covered by Part B." *Id.* at § 4: Prescription Drug Coverage.

56.     To be eligible for payment under Part B of the program, pharmacies must certify: "I agree to abide by the Medicare laws, regulations and program instructions ... I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b) (section 1128B(b) of the Social security Act) ...)." CMS Form-855s (05/16) at 24.

57.     All persons enrolled in Medicare Part A and/or Part B are eligible to enroll in a prescription drug plan under Medicare Part D.

58.     Under Medicare Part D, CMS contracts for and subsidizes insurance plans offered by private, third-party insurers or Plan Sponsors. To qualify for CMS payments under Medicare Part D, CMS requires Plan Sponsors to go through an application process, certify compliance with the law in its contracts and bids, and meet stated reporting requirements. 42 C.F.R. § 423.882. A Plan Sponsor enters into a contract with CMS that

21

covers one or more Part D plans, and it also enters into contracts with pharmacies as it relates to the reimbursement rate for covered Part D drugs.

59.    Title XIX of the Social Security Act ("Medicaid" or the "Medicaid Program") authorizes grants to States for medical assistance to children and blind, aged, and disabled individuals whose income and resources are not sufficient to meet the costs of necessary medical care. *See* 42 U.S.C. § 1396; 42 C.F.R. § 430.0. The Medicaid Program is jointly funded by the Federal Government and participating States. The amount of Federal funding in a State's program (Federal Financial Participation) is determined by a statutory formula set forth in 42 U.S.C. §§ 1396b(a) and 1396d(b). A State that elects to participate in the Medicaid Program must establish a plan for providing medical assistance to qualified beneficiaries. 42 U.S.C. §§ 1396a(a)-(b); *see* 42 C.F.R. §§ 430(A) & (B); CMS State Medicaid Manual § 13025. In exchange, the Federal Government, through CMS, pays to the State the federal portion of the expenditures made by the State to providers, and ensures that the State complies with minimum standards in the administration of the Medicaid Program. 42 U.S.C. §§ 1396, 1396a & 1396b.

60.    The Medicaid programs in all States reimburse for prescription drugs. Under the Medicaid Drug Rebate Statute, 42 U.S.C. §§ 1396b(i)(10)(A) and 1396r-8(a)(1), and in exchange for Medicaid coverage for their drugs, drug manufacturers enter into national rebate agreements that require them to pay rebates to State Medicaid programs when their drugs are dispensed to Medicaid patients. The vast majority of States award contracts to private companies to evaluate and process claims for payment on behalf of Medicaid recipients. Typically, after processing the claims, these private companies then generate funding requests to the State Medicaid programs.

61.     Individuals or entities that provide services to Medicaid beneficiaries submit claims for payment to the Medicaid agency or its local delegate agency. *See* 42 C.F.R. § 430.0.  Payments are made based on types and ranges of services, payment levels for services, and administrative and operating procedures established by the State in accordance with Federal laws, statutes and rules. *Id.*

62.     The States require certifications by pharmacists as a condition of providing Medicaid reimbursement for the prescriptions they write.

63.     Every State that elects to participate in the Medicaid Program must establish and maintain a State Plan consistent with Federal law regarding the coverage of treatment for individuals with CKD or ESRD.  State Plans must be reviewed and approved by CMS. The Medicaid Program generally requires prior authorization for all services and treatment plans to be administered to individuals with CKD or ESRD.

64.     The United States also provides reimbursement for medical care under other health care programs:

> a.     The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") (presently entitled "TRICARE"), 10 U.S.C. §§ 1071-1106, is a federally-funded program administered by the Department of Defense. TRICARE/CHAMPUS provides medical benefits to certain active duty service members and their spouses and unmarried children, certain retired service members and their spouses and unmarried children, and reservists called to duty and their spouses and unmarried children. 32 C.F.R. § 199 *et seq.*  TRICARE pays for its beneficiaries' medical products alleged herein.

      b.     CHAMPVA is a health care program administered by the United States Department of Veterans Affairs for families of veterans with 100-= percent service-connected disabilities. CHAMPVA pays for its beneficiaries' medical products alleged herein.

      c.     The Federal Employees Health Benefits Program ("FEHBP") provides health care coverage for qualified federal employees and their dependents. FEHBP pays for its beneficiaries' medical products alleged herein.

65.     DaVita Inc. derives a majority of its revenue from patients enrolled in the Payer Programs. For instance, according to DaVita's Form 10-K from 2018, the Payer Programs provided DaVita with 69% of its total revenue, with 59% coming from Medicare and Medicare-assigned plans, 6% coming from Medicaid and managed Medicaid plans, and 4% coming from other Payer Programs. *See* DaVita Inc. Form 10-K at p.5, available at https://investors.davita.com/static-files/acb28415-50fa-42ea-af75-b3a33d50d7cb (last accessed on Dec. 3, 2019).

66.     DaVita Inc. states in its 2018 Form 10-K that approximately 35% of its U.S. dialysis and related lab services net revenues were derived from patients using State Medicaid or other non-Medicare government-based programs, such as plans offered by the Department of Veterans Affairs, as their primary coverage. *Id.* at p.51.

67.     DaVita Inc. also addresses the FCA and the Civil Monetary Penalties Law in its Form 10-K from 2018 and acknowledges that it is obligated "to report and return overpayments within 60 days of when the overpayment is identified and quantified." *Id.*

at p.34.  In 2009, DaVita Inc. began including this reporting requirement in its Form 10-K after the FCA was substantially amended.

68.     On October 22, 2014, as part of a $350 million settlement to resolve FCA claims with the Federal Government, DaVita became subject to a Corporate Integrity Agreement ("CIA").  The CIA remained in place until October 22, 2019.  Among other requirements, under the CIA DaVita is required to report (a) probable violations of criminal, civil or administrative laws applicable to any federal health care program for which penalties or exclusions may be authorized under applicable laws and regulations, and (b) substantial overpayments of amounts of money it has received in excess of the amounts due and payable under the federal health care program requirements.

69.     Based upon the misconduct alleged in this Complaint, DaVita is in violation of its CIA with the HHS and the Office of Inspector General.

## VI.     CHRONIC KIDNEY DISEASE AND END STAGE RENAL DISEASE.

76.     Chronic Kidney Disease ("CKD") is the slow loss of kidney function typically caused by diabetes or high blood pressure.  Approximately 15% of U.S. adults (roughly 30 million) have CKD.  *See* Center for Disease and Prevention's Chronic Kidney Care Basics, available at https://www.cdc.gov/kidneydisease/basics.html (last accessed on Dec. 3, 2019).  This population, which accounts for more than one in seven adults, experiences higher rates of heart disease and stroke, and may develop anemia or weak bones due to the reduced ability of their kidneys to filter blood. *Id.*  CKD is typically asymptomatic until the kidneys are severely damaged and begin to fail.  Those afflicted with CKD can change their diets or take high blood pressure drugs, statins, or other medications to help manage CKD.  Excluding advanced CKD (discussed in the following paragraph), Medicare beneficiaries with CKD accounted for 20% of total Medicare

25

expenditures in 2014. *See* U.S. Renal Data System, available at https://www.usrds.org/2016/view/v1_06.aspx (last accessed on Dec. 3, 2019).

77.     End Stage Renal Disease ("ESRD"), or "stage 5 CKD", is the final stage of CKD.  A person is said to have ESRD when their glomerular filtration rate (how much blood passes through the glomeruli—capillaries that function as blood filters—in the kidneys per minute) is less than 15 mL/min.  There are two treatment options for ESRD: dialysis or kidney transplant.  In dialysis, blood is removed from the body via a machine, impurities are filtered out in an acidified solution, and then the filtered blood is returned to the patient.

78.     DaVita Inc. is the second largest provider of treatment for CKD and ESRD, establishing it as one of the two largest markets for drugs manufactured for treatment of kidney disease, including Sanofi's Renagel, Renvela, and Hectorol, Amgen's Sensipar and Parsabiv,[3] and Fresenius's Velphoro.

## VII.    DEFENDANTS' WRONGFUL CONDUCT

76.     By virtue of Relator's position and responsibilities with DaVita Rx, Relator was ideally situated to investigate and uncover the fraudulent conduct alleged herein. Relator's position and responsibilities conferred upon Relator direct and independent knowledge of Defendants' fraudulent conduct as to specific schemes and has enabled Relator to discover and investigate their systemic and illegal practices, as detailed below.

77.     DaVita Inc. participated in the negotiations between DaVita Rx and Defendant Pharmaceutical Companies, and even served as signature party to several agreements.  As highlighted by a January 2015 internal PowerPoint presentation titled

---

[3] Beginning in 2018, CMS began bundling reimbursement of Sensipar and Parsabiv with the CKD and ESRD therapy performed by DaVita Inc.

"Amgen Rebate Analysis," DaVita clarified that "[n]o decisions will be made without highest levels of clinical leadership input."

78.     On paper, Defendant Pharmaceutical Companies predominantly entered into written agreements with DaVita Inc.'s wholly-owned subsidiary, DaVita Rx.  By contracting with DaVita Rx, Defendant Pharmaceutical Companies experienced the same access to DaVita patients as if they were contracting with DaVita Inc. itself.  Because DaVita Rx exclusively filled prescriptions from DaVita Kidney Care, which was DaVita Inc.'s division that provided treatment relating to kidney disease, Defendant Pharmaceutical Companies were essentially selling their drugs to a health care provider. Indeed, DaVita Rx's purchasing correlates within 1% of dispensing and is used internally as a proxy for fills.  Thus, with this arrangement, there was no material difference between conditioning an agreement on DaVita Rx *purchasing* Defendant Pharmaceutical Companies' drugs as opposed to *dispensing* the drugs because all purchased drugs would necessarily be dispensed to DaVita Inc. patients.

### A. Defendant Pharmaceutical Companies Paid Hundreds of Millions of Dollars of Kickbacks to DaVita in the Form of  Improper Rebates and Discounts.

#### Genzyme/Sanofi

79.     Beginning from at least the parties' May 1, 2005 written agreement, Genzyme (which was later bought by Defendant Sanofi) offered DaVita tiered volume rebates based on DaVita Rx dispensing.  The tiers were based on quarterly volume, which incentivized DaVita with a larger rebate percentage if DaVita Rx achieved higher tiers by dispensing greater volumes of Genzyme prescription drugs.

27

80.     In the same agreement, Genzyme also offered DaVita tiered adherence rebates.   Under these provisions, the adherence rebates increased if DaVita grew the "Average Number of Renagel® Product Units Dispensed per Customer Patient."

81.     Genzyme also offered DaVita Outcome Performance Incentives that were purportedly intended to improve patient clinical outcomes by encouraging an increase in the number of patients at or below the target range for certain outcome metrics.  This performance rebate was a tiered discount based on the quantity of dispensed prescription drugs to Renvela and Renagel patients at or below 55% calcium phosphate product, ("CPP") and Hectorol patients at or below 300 pg/mL parathyroid hormone, ("iPTH"). Renagel and Renvela reduce CPP and Hectorol lowers iPTH.  The only method by which DaVita Rx could affect a patient's CPP or iPTH was to provide them with medication.  The rebate therefore rewarded DaVita Rx for dispensing Renagel, Renvela, or Hectorol and rewarded DaVita for prescribing the three branded drugs.

82.     The payments described in the preceding paragraphs were knowingly and intentionally designed by Genzyme and Sanofi to reward DaVita for increasing utilization of Renvela, Renagel, and Hectorol amongst DaVita patients.  The correlation between the rise in payments and resulting sales figures further underscore Genzyme and Sanofi's intent and DaVita's participation in this kickback scheme.  For example, from 2010 through 2015, Genzyme and Sanofi paid DaVita rebates for Renvela and Renagel totaling at least $256,500,000.  During the same period of time, Renvela and Renagel sales increased in lockstep from $173.7 million in 2010 to $555 million in 2016 as it relates to DaVita patients.  Thus, Genzyme and Sanofi rewarded DaVita with volume and adherence rebates,

along with the outcome performance incentives, in exchange for increasing the sale of Renagel, Renvela, and Hectorol amongst DaVita patients.

### Amgen

83.     From at least 2009, Amgen offered DaVita volume rebates based on DaVita Rx purchasing its prescription drugs, Parsabiv and Sensipar. The rebate percentage was applied to the wholesale acquisition cost in effect on the date dispensed and was based on the volume of purchased units after returns. Despite the volume rebates being conditioned on purchasing because (a) DaVita Rx's drug purchasing correlated within 1% of its drug dispensing, and (b) DaVita Rx only filled prescriptions from DaVita Inc. patients, these rebates were conditioned on prescribing and dispensing Parsabiv and Sensipar to DaVita Inc.'s patients. As DaVita acknowledged internally, "[v]olume rewards doctors prescribing decisions." Furthermore, due to DaVita's operating structure, rewarding DaVita Rx with incentive payments was the same as rewarding DaVita Inc.

84.     In 2009, Amgen paid DaVita $2.6 million in rebates to prescribe and dispense Sensipar.

85.     Drawing on the success of the rebate incentive, beginning in 2010, Amgen gave DaVita a 3% upfront discount and an average rebate of 8.7%, 9% and 9.7%, worth $6.45 million, $9.76 million and $13.95 million for 2011, 2012 and 2013, respectively.

86.     In 2013, Amgen and DaVita renegotiated their contract to implement a tiered volume rebate. The tiers were based on quarterly volume, which incentivized DaVita with a larger rebate percentage if DaVita Rx achieved higher tiers by dispensing greater volumes of Amgen drugs.

87. Further, beginning in 2018, Amgen offered DaVita a best net price rebate on Sensipar and Parsabiv, which provided DaVita with a rebate equivalent to the difference of the Net Low Price multiplied by the milligrams purchased per quarter where a qualified customer received a lower Net Price. This rebate essentially granted DaVita most favored nation pricing.

88. The continuously increasing rebates correlated with continuously increasing sales of Sensipar and Parsabiv, which highlight Amgen's understanding that the more prescription drugs sold to DaVita Rx, the more prescription drugs are sold to DaVita patients.

### Fresenius

89. DaVita also accepted unlawful payments from Fresenius to promote the utilization of Velphoro and other drugs prescribed for the treatment of CKD, ESRD and associated comorbidities. An April 15, 2014 Products Purchase Agreement reveals that Fresenius offered DaVita a discount of 18% off the wholesale acquisition cost for Velphoro. This discount was extended in five amendments, remaining in effect until December 31, 2018.

90. The Products Purchase Agreement—and five extensions thereof—demonstrate that the discount financially benefitted both parties. For Fresenius, deeply discounted Velphoro purchases by DaVita Rx translated into dispensing and prescribing to DaVita Inc.'s patients. This *quid pro quo* leveraged discounts for increased use of Fresenius's Velphoro.

**B. Sanofi and Amgen Significantly Increased Rebates on Branded Drugs to Induce Brand Purchasing Instead of Less Expensive Generics.**

**Sanofi**

91.     On January 1, 2014, Sanofi and DaVita entered a written agreement whereby Sanofi would continue to provide tiered volume rebates to DaVita. Notably, the contract also provided DaVita with enhanced volume rebates and adherence rebates. These "enhanced" rebates were added on top of the base rebates and were paid until an authorized generic was released by Sanofi or December 31, 2016, whichever occurred earlier.

92.     The enhanced rebates incentivized DaVita with additional unlawful remuneration in exchange for prescribing and dispensing as much Sanofi products as possible before Sanofi released a less profitable authorized generic.

**Amgen**

93.     Amgen's Parsabiv and Sensipar were facing imminent competition from generics in late 2017.

94.     In response to this threat, on December 14, 2017, Amgen increased its tiered volume rebate based on the amount of units purchased by DaVita.

95.     Amgen also began offering a "Best Net Price" rebate and an 8% upfront discount off the prevailing wholesale acquisition cost for Sensipar and Parsabiv.[4]

96.     Further, Amgen increasingly raised the rebate for Parsabiv and Sensipar each quarter before the generic's release and provided for even more significant increases after the generic's release:

---

[4] CMS implemented the transitional drug add-on payment adjustment to Parsabiv and Sensipar which essentially bundled the two drugs' reimbursement with CKD and ESRD therapy. In response, Amgen and DaVita moved the volume rebate clause to their Dialysis Center Agreement, which was ratified on December 14, 2017.

31

     a.     The pre-generic rebate for Parsabiv increased from 3% to 31% based on tier and quarter from Q1 2018 through Q4 2020; should the generic launch during this period, the quarterly rebates increased to 13% to 41%; and

     b.     The pre-generic rebate for Sensipar increased from 2% to 17% from Q1 2018 though Q4 2020; should the generic launch during this period, the quarterly rebates increased from 12% to 27% for Sensipar.

97.     The increased Amgen rebates demonstrate Amgen's intent to steer DaVita to increase prescriptions of their higher-priced brand drugs instead of less costly generics, which is evidenced by Amgen providing DaVita with substantially higher rebates for Parsabiv and Sensipar purchased after the generics were released.  Incremental quarter-by-quarter increases to the rebate percentages prior to the generics' release also demonstrate an effort to sell as much Parsabiv and Sensipar before the release of the competing, less costly generic drug.

### C. Sanofi Improperly Conditioned Rebates for its Branded Drugs on DaVita's Exclusive Use of Sanofi's Authorized Generics.

98.     Beginning in 2014, Sanofi gave DaVita Rx most favored nation pricing and market-leading rebates on its brand drugs in exchange for DaVita Rx agreeing to exclusively sell Sanofi's authorized generic Sevelamar and to maintain inflated prices on non-generic Sevelamar.  In other words, DaVita and Sanofi tied the brand rebates to authorized generic exclusivity.  As DaVita representatives stated in a July 2017 presentation, "[w]e re-negotiated contract last year to extended brand rebates in exchange for higher generic pricing."  DaVita added in a 2017 presentation regarding its Sanofi

renegotiation strategy, "[w]e believe we maximized risk-adjusted return by trading higher, adjustable generic pricing for brand rebates into perpetuity."

99.     The agreement between DaVita and Sanofi evidences Sanofi's overall pay-to-delay strategy to suppress generic competition. In a 2016 untitled internal presentation, DaVita stated, "Sanofi has shared broadly its strategy to incentivize PBMs to block generic dispenses [sic], however it will not share specifics."

100.     Further evidence shows that DaVita understood and participated in Sanofi's tactics. In a 2017 internal presentation, DaVita stated that Sanofi "has incentivized payers / PBMs to block generics for some period via back end rebates" and that Sanofi's "'brand for generic strategy' [is] to rebate PBM to deny generic reimbursement."

101.     This arrangement, whereby Sanofi offered DaVita better pricing on a brand drug in exchange for DaVita exclusively selling Sanofi's authorized generic, is prohibited by the AKS.

### D. Defendant Pharmaceutical Companies Disguised Kickbacks To DaVita As Payments Through Their "Symphony" Educational Programs.

102.     Defendant Pharmaceutical Companies paid Persistency Rebates to DaVita on the condition that DaVita implemented their respective patient education programs referred to as "Symphony."

103.     The Symphony programs were designed to increase the length of time DaVita patients remained on a specific prescription, also known as a patient's adherence and persistency, which directly correlated to increased sales for Defendant Pharmaceutical Companies.

104.     Under these programs, DaVita Rx provided valuable inducements, such as pharmacist services and support, pharmacist intervention, refill management, and clinical

information, all aimed to identify and address patient barriers to medication adherence, including providing financial assistance.

105.    DaVita Rx primarily implemented Symphony by conducting interviews and creating data reports based on interviews and the associated patient behavior. The interviews were performed via telephone by pharmacy technicians or pharmacists employed by DaVita Rx. The technician/pharmacist would promote to patients the importance of staying on the Defendants Pharmaceutical Companies' medications, and monitor if patients refilled their prescriptions. If the patient did not refill the prescription, the technician/pharmacist would re-engage with the patient to pressure for re-fills..

106.    Under the Symphony programs, Defendant Pharmaceutical Companies improperly paid DaVita technicians/pharmacists to promote and persuade DaVita patients to remain on their drugs. Moreover, Defendant Pharmaceutical Companies used Symphony as another pay-to-play scheme (in addition to product purchase agreements) to provide additional compensation to DaVita in exchange for increasing utilization of their drugs amongst DaVita patients. DaVita provided no similar services to drug companies that did not participate in Symphony.

### Genzyme/Sanofi

107.    From 2010 to 2015, Genzyme and Sanofi offered DaVita its Patient Education and Persistency Rebate through its Symphony Program.

108.    In the parties' January 1, 2010 Rebate Agreement, Genzyme provided DaVita Rx a "program rebate" of 1.5% off the wholesale acquisition cost for dispensed Renagel and Renvela, capped at $1 million.

34

109.    The following year, on January 1, 2011, Sanofi increased the program rebate to 5% off the wholesale acquisition cost with a 5-quarter cap of $3.287 million.

110.    Because the program significantly increased sales of Renagel and Renvela, Sanofi again raised the program rebate cap on December 31, 2012 to $9.4 million.

111.    Defendants' internal data substantiated that DaVita's pay-to-play scheme embodied in Symphony significantly increased patients' continued prescription refills for those drug companies participating in the program.  In fact, a 2012 DaVita internal study documented that after 18 months only 9% of non-DaVita patients continued to use Renvela and Renagel while 52% of Symphony patients continued to take the medications.  A second internal analysis showed that Sanofi's Symphony program led to an additional $2.13 million per 1,000 patients each year. In summary, Symphony significantly impacted patients' refills and, of course, sales of Renagel and Renvela.

112.    Further, Symphony played a pivotal role in Renvela's and Renagel's financial success when the two drugs faced competition from significantly less expensive generic Calcium Acetate in 2014.  Symphony effectively blocked patients from taking advantage of less expensive generic alternatives at a time when generic Calcium Acetate became widely prescribed outside the DaVita patient population market.  As summarized by a 2015 internal DaVita presentation showing 2014 sales figures to non-Symphony patients, sales of Calcium Acetate significantly increased as sales of Renvela and Renagel experienced sharp decreases:



113.    In stark contrast, data reveals that Calcium Acetate had a very minor effect on Renvela and Renagel sales for patients enrolled in the Symphony program during this same time period:



114.    The data demonstrates that Sanofi's improper payments to DaVita Rx for its technicians/pharmacist promotion under the Symphony program were key drivers of maintaining Renagel and Renvela utilization amongst DaVita patients.

**Amgen**

115.    From (at least) 2013 to 2015, Amgen incentivized DaVita with its Patient Education and Persistency Rebate through its Symphony program to promote Amgen drugs.

116.    Pursuant to a 2013 Symphony Agreement, Amgen paid DaVita on a tiered basis that ranged from $31.25 to $35.85 per patient for every telephone call in which DaVita staff collected patient data. The rebate was extended in 2014 and 2015. The 2015 Agreement streamlined the price per patient communication amount to $33 per patient call where data was collected.

117.    Amgen achieved its goal of protecting and increasing patient refills of Sensipar.

        a.    From the 3rd through the 11th month of the program, Symphony patients refilled Amgen prescriptions between 28 to37% more often than the rest of the Sensipar patient population.

        b.    From 2009 to 2012, DaVita patients spent an average of 65% more per year on Sensipar than the rest of the United States Sensipar patient population.

118.    The data compiled by Defendants demonstrates that the improper payments to DaVita by Amgen under the Symphony program yielded significant financial results for Amgen correlated to prescription refills, as compared to other patients taking Amgen's

drug outside of Symphony. Moreover, Amgen paid DaVita to influence patients which directly caused substantial profits by maintaining utilization of Sensipar amongst patients enrolled in the program.

**Fresenius**

119.    Beginning with the parties' 2015 agreement, Fresenius and DaVita implemented Fresenius's Symphony program to promote Fresenius's drug, Velphoro.

120.    Data shows that the program directly correlated to increased sales for Fresenius's Velphoro.

121.    Accordingly, the Symphony program resulted in substantial profits for Fresenius through increased Velphoro sales.

### E. Genzyme and Amgen Disguised Kickbacks To DaVita As Payments Through Their "Profiles" Patient Education Programs.

**Genzyme.**

122.    Genzyme implemented its Profiles program in DaVita to collect data and target doctors to increase sales of Renagel, Renvela and Hectorol.

123.    Beginning on at least January 1, 2011, Genzyme and later Sanofi (collectively, "Sanofi") paid DaVita millions of dollars to implement its Profiles program to increase prescriptions of Renagel, Renvela, and Hectorol amongst DaVita patients. The goals of the Profiles program were twofold. First, the payments allowed Genzyme/Sanofi to buy access to health care providers and staff treating DaVita patients and influence physicians' prescriptions. Second, the Profiles program acted as a source of significant additional compensation to DaVita separate from its purchase agreements. Both goals were aimed at increasing utilization of Renvela, Renagel, and Hectorol in the DaVita patient population market.

38

124.    Under the Profiles program, DaVita Rx collected patient information on all DaVita patients regardless of whether or not they were patients who received their prescriptions from DaVita Rx.  This information included clinical outcomes data and prescription coverage, insurance and copay information.[5]

125.    The information was aggregated by DaVita facilities and then disclosed to Sanofi sales representatives to aid Sanofi in identifying patient targets for its drugs and their respective prescribing physicians.  Sanofi representatives then used this information to promote to physicians directly about barriers to physician prescription, such as the high costs of the medication.

126.    In fact, Sanofi contractually obligated DaVita under the Profiles program to give Sanofi access to physicians treating DaVita patients in order to promote to those physicians with the information Sanofi paid DaVita to collect and disclose.  As pointed out in a DaVita internal presentation, "the data will have no value without the ability to discuss financial access solutions with facility teammates."

127.    Because of these contractual provisions, the rebates associated with the Profiles program became key drivers of Renagel, Renvela and Hectorol sales.  In exchange for its compliance with these demands, Sanofi made the following offers of remuneration to DaVita:

> a.    From at least January 1, 2011 to May 9, 2012, in exchange for implementing the Profiles program, Genzyme/Sanofi offered DaVita a rebate of 5% off wholesale acquisition price for dispensed units of Renvela

---

[5] Relator does not allege that DaVita violated HIPAA or otherwise shared any HIPAA-protected patient information as a result of the Profiles program.

and Renagel.   Under this agreement, Genzyme/Sanofi improperly paid DaVita millions of dollars in rebates for prescribing and dispensing more Renvela and Renagel;

b.      From May 10, 2012 through February 23, 2014, Sanofi offered DaVita Rx lump sum payments on roughly a quarterly basis to execute the Profiles program.   These payments were meant to provide Sanofi with data and access to personnel working in DaVita facilities to increase the number of patients prescribed Renagel and Renvela;

c.      Beginning on February 24, 2014, Sanofi began paying DaVita Rx $10.50 per patient for information collected and transmitted to Sanofi under the Profiles program.   Payments were based on "Rollouts", which were pre-determined time periods of two to four months when the data would be aggregated and transmitted.   The limits for these payments peaked at $1.75 million per rollout.

**Amgen**

128.    Beginning in at least 2012 with the March 28, 2012 De-Identified Data License Agreement, Amgen and DaVita implemented Amgen's Profiles program.

129.    The program provided Amgen patient information in addition to affording "Amgen the opportunity to discuss certain mutually agreed to element [sic] of the Data related to Secondary HPT and/or the Product using Amgen created marketing materials with certain employees and/or agents of DaVita, as mutually agreed to by the Parties and as permitted by this Agreement and Sections 2.8.6 and 5.4 of the Sourcing Agreement with respect to such Amgen created marketing materials."   The Amgen Profiles program further

40

"allow[ed] Amgen the opportunity to provide information on patient resources and programs related to the Product as mutually agreed to by the Parties."

130. The March 28, 2012 De-Identified Data License Agreement provided DaVita with quarterly payments equal to $21.83 per patient for which data was provided. The payments were capped at 150,000 patients or $3,274,500. The November 30, 2012 First Amendment increased the cap on these payments to 160,000 patients.

131. Amgen's Profiles program proved to be effective. During the relevant period, DaVita prescribed 40% to 72% more Sensipar per patient than the rest of the United States market. This led to a significant increase in Sensipar sales for Amgen.

132. The significantly higher Sensipar sales figures amongst Profiles patients shows that the program accomplished its purpose, namely, to gain access to doctors treating DaVita patients in order to increase Sensipar utilization.

### F. Defendant Pharmaceutical Companies Disguised Kickbacks to DaVita as Payments for Prescription Data.

133. Defendant Pharmaceutical Companies and DaVita entered written agreements that provided payments to DaVita in exchange for its de-identified data for CKD and ESRD drugs, including information on their competitors' products. In practice, though, these agreements were another way for Defendant Pharmaceutical Companies to pay DaVita to prescribe and dispense their prescription drugs.

134. From at least January 1, 2010 through 2017, Genzyme and Sanofi paid more than $250,000 per year to DaVita Rx in exchange for de-identified prescription data. Reports were sent by DaVita and payments were made by Genzyme/Sanofi on a monthly basis. In 2014, this became a quarterly exchange.

135.    From at least September 9, 2011, Amgen paid $507,600 to DaVita Rx for prescription data under the parties' De-Identified Data License Agreement.

136.    From at least December 23, 2014 through the end of 2015, Fresenius paid $24,000 per month to DaVita for de-identified prescription data.

137.    These money-for-data exchanges were sham payments.   This setup provided a separate channel for Defendant Pharmaceutical Companies to funnel money to DaVita, which further bolstered Defendant Pharmaceutical Companies' remuneration offer to DaVita on top of the rebates and discounts.

### G. Fresenius and DaVita Submitted Artificially-Inflated Costs to CMS.

138.    From at least 2012 through 2018, Fresenius and DaVita participated in a scheme to inflate the costs and fees of items that they bought and sold to each other.  The companies then submitted the fraudulently inflated costs to CMS as expenses on Form CMS-265-11.  This resulted in both DaVita and Fresenius fraudulently inflating the expense of providing CKD and ESRD treatment to State and Federal beneficiaries.

139.    Specifically, in the parties' November 27, 2012 Pharmacy Services and License Master Agreement, DaVita agreed to dispense drugs at inflated prices and fees to patients of Fresenius's health care business.

140.    The terms called for Fresenius to pay DaVita a $7.95 dispensing fee, $1 shipping fee to clinics (or $5 shipping fee to bundle patients), $25 for Calcium Acetate and $40 for all other CKD and ESRD drugs.  These prices were intentionally set well above market value for these services.  Fresenius paid DaVita a minimum of $57 million and a maximum of $63 million with $10 million upfront to dispense drugs to Fresenius patients.

141.    The payments were a *quid pro quo* for DaVita renewing an agreement to buy dialysis machines and other products from Fresenius at above market value in 2013.

142.    Fresenius and DaVita stood to benefit from their false statements to CMS on the form CMS-265-11 because CMS uses these submissions to set its reimbursement costs for particular products and services. Therefore, by submitting CMS-265-511 forms with inflated costs, Fresenius and DaVita—to their financial benefit—indicated to CMS that it should maintain robust reimbursement rates for these products and services.

143.    The accurate submission of costs on Form CMS-265-11 is a condition of payment. Failure to submit this form can result in the suspension of payments from CMS. Because CMS uses these expense reports to justify the value of reimbursement of providing treatment for CKD and ESRD, the United States Government continued to bear the overall inflation caused by the false statements made in conjunction with this *quid pro quo* arrangement.

## VIII.   DAMAGES

144.    The United States and the States of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and Wisconsin, the Commonwealths of Massachusetts and Virginia, the District of Columbia, and Doe States 1-18 have suffered damages as a result of the acts and practices of Defendants, as described herein, in presenting, causing to be presented, and conspiring to present false and fraudulent claims, statements, and records to the United States for prescription drugs that were not eligible for reimbursement as a result of systemic overcharging by Defendants.

145.    Defendants' false statements were material to the decision of the United States and States to cover and reimburse Defendants for the prescription drugs, *inter alia*, challenged herein.

146.    Defendants profited unlawfully from the payment of the false and fraudulent claims by the United States and States.

147.    Damages to the United States, the States, and the Payer Programs are substantial.

148.    The States of California and Illinois have also suffered damage as a result of the acts and practices of Defendants, as described herein, in presenting or causing to be presented and conspiring to present false and fraudulent claims, statements, and records to private insurance companies.

**COUNT I**
**VIOLATIONS OF THE FALSE CLAIMS ACT**
**31  U.S.C. § 3729(a)(1)(A)**

149.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

150.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), provides in relevant part that any person who:

> knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of damages which the Government sustains because of the act of that person. . . .

151.    By virtue of the acts described herein, Defendants knowingly presented, or

44

caused to be presented, false or fraudulent claims for payment of covered prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

152. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

153. Unaware that Defendants submitted false statements to conceal their misconduct and falsely certified compliance with laws and regulations despite pervasive and substantial non-compliance, the United States paid the false claims submitted for Defendants' prescription drugs, products, and services. These claims would not have been paid but for Defendants' fraud and false statements.

154. In reliance on the accuracy of Defendant's statements, records, data, representations, and certifications, the United States has paid said claims and has suffered financial losses as a result of these acts by Defendants.

**COUNT II**
**VIOLATIONS OF THE FALSE CLAIMS ACT**
**31 U.S.C. § 3729(a)(1)(B)**

155. Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

156. The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), provides in relevant part that any person who:

45

knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . .

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of damages which the Government sustains because of the act of that person. . . .

157.     By virtue of the acts described herein, Defendants knowingly presented, or caused to be presented, false or fraudulent records or statements material to false or fraudulent claims for payment of covered prescription drugs, products, or services to which they were not entitled. Defendants knew that the records and statements were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the records and statements, or acted in reckless disregard for whether the records and statements were true or false.

158.     Each false or fraudulent record or statement material to a false or fraudulent claim for payment or reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

159.     Unaware that Defendants submitted false records or statements to conceal their misconduct and falsely certified compliance with laws and regulations despite pervasive and substantial non-compliance, the United States paid the false claims submitted for Defendants' prescription drugs, products, and services. These claims would not have been paid but for Defendants' fraud and false statements.

160.     In reliance on the accuracy of Defendants' statements, records, data, representations, and certifications, the United States has paid said claims and has suffered financial losses as a result of these acts by Defendants.

## COUNT III
## VIOLATIONS OF THE FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(1)(C)

161.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

162.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), provides in relevant part that any person who:

> conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) . . .

> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus three times the amount of damages which the Government sustains because of the act of that person. . . .

163.    By virtue of the acts described herein, Defendants conspired to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) and (B) by knowingly presenting, or causing to be presented, false or fraudulent claims for payment by knowingly making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.  Defendants knew that these claims were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

164.    Unaware of the conspiracy to submit false records and/or statements to conceal their misconduct and falsely certified compliance with laws and regulations despite pervasive and substantial non-compliance, the United States paid the false claims submitted for Defendants' covered prescription drugs, products, and services.  These claims would not have been paid but for Defendants' fraud and false statements.

47

165.    In reliance on the accuracy of Defendants' statements, records, data, representations, and certifications, the United States have paid said claims and have suffered financial losses as a result of these acts by Defendants.

## PRAYER AS TO COUNTS I-III

WHEREFORE, Relator prays that this District Court enter judgment on behalf of Relator and against Defendants in Counts I-III, respectively, as follows:

a.    Damages in the amount of three times the actual damages suffered by the United States Government as a result of each Defendants' conduct;

b.    Civil penalties against the Defendants, respectively, equal to not less than $5,000 and not more than $10,000, adjusted for inflation according to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, for each violation of 31 U.S.C. § 3729;

c.    The fair and reasonable sum to which Relator is entitled under 31 U.S.C. § 3730(b); additionally, Relator is entitled, in equity, to recover attorneys' fees from the fund created for non-participating beneficiaries (those not contributing material time and expense to generating any settlement or recovery from any Defendant) under the Common Fund doctrine to be paid from the recovery fund generated for such non-participatory beneficiaries from Defendant;

d.    All costs and expenses of this litigation, including statutory attorneys' fees and costs of court;

e.    Pre-judgment and post-judgment interest, as appropriate, at the highest rate allowed by law;

f.    Relator's individual damages, if any, which may be alleged; and

g.      All other relief on behalf of Relator or the United States Government to which they may be justly entitled, under law or in equity, and the District Court deems just and proper.

**COUNT IV**
**VIOLATIONS OF THE FEDERAL AND STATE ANTI-KICKBACK STATUTES**
**42 U.S.C. §§ 1320a-b(2) and State Anti-Kickback Statutes**

166.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

167.    By virtue of the acts described herein, Defendants have offered and paid unlawful incentives or kickbacks in violation of the AKS and comparable State anti-kickback statutes, as well as solicited and received illegal kickbacks in violation of the AKS and comparable State anti-kickback states.  In order to sell the prescription drugs at issue in this Complaint, Defendant Pharmaceutical Companies authorized and directed its employees and agents to offer and award unlawful incentives, and DaVita authorized and directed its employees and agents to solicit and receive unlawful incentives.  These incentives were offered to increase utilization of the prescription drugs amongst DaVita patients for monetary gain.

168.    Regarding prescription drugs, the AKS statutes aim to prevent the purchase, dispensing or prescription of prescription drugs based on increased utilization of the prescription drugs (translating to financial benefit to Defendants) rather than for their medical necessity.  Because of Defendants' illegal actions, the prescription drugs cited in this Complaint have been purchased, dispensed or prescribed in violation of the AKS statutes and the FCA.

49

169. Violation of the AKS statutes rendered Defendants ineligible to receive reimbursement for the submitted claims, particularly where a Defendants had re-certified compliance with the AKS statutes after having received any kickback from other Defendants.

170. Defendants deliberately and intentionally concealed material information, including the false and fraudulent nature of the claims, from the United States and States in order to induce payment of the false and fraudulent claims.

171. Defendants knowingly caused to be presented false or fraudulent claims resulting from kickbacks and therefore caused the United States and States to reimburse ineligible claims.

172. Defendants submitted such claims as a natural and foreseeable result of the illegal activity of Defendants described in this Complaint.

173. Unaware that Defendants submitted false records and/or statements to conceal their misconduct and falsely certified compliance with laws and regulations despite pervasive and substantial non-compliance, the United States and States paid the false claims submitted for Defendants' covered prescription drugs, products, and services. These claims would not have been paid but for Defendants' fraud and false statements.

174. In reliance on the accuracy of Defendants' statements, records, data, representations, and certifications, the United States and States have paid said claims and have suffered financial losses as a result of these acts by Defendants.

## **PRAYER AS TO COUNT IV**

WHEREFORE, Relator prays that this District Court enter judgment on behalf of Relator and against Defendants in Count IV as follows:

a.      Damages sustained by the United States, including the amounts Defendants unlawfully obtained;

b.      All costs and expenses of this litigation, including statutory attorneys' fees and costs of court;

e.      Pre-judgment and post-judgment interest, as appropriate, at the highest rate allowed by law;

f.      Relator's individual damages, if any, which may be alleged; and

g.      All other relief on behalf of Relator or the United States Government to which they may be justly entitled, under law or in equity, and the District Court deems just and proper

## COUNT V
## UNJUST ENRICHMENT

175.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

176.    Relator, on behalf of the United States, claims the recovery of all monies by which Defendants have been unjustly enriched, including profits earned by Defendants because of overcharging Medicaid and other Federal Payer Programs for covered prescription drugs, products, and services.

177.    By obtaining monies as a result of its violations of Federal and State law, Defendants were unjustly enriched, and are liable to account and pay such amounts, which are to be determined at trial, to the United States.

## PRAYER AS TO COUNT V

WHEREFORE, Relator prays that this District Court enter judgment on behalf of Relator and against Defendants in Count IV as follows:

a.      Damages sustained by the United States, including the amounts Defendants unlawfully obtained;

b.      All costs and expenses of this litigation, including statutory attorneys' fees and costs of court;

e.      Pre-judgment and post-judgment interest, as appropriate, at the highest rate allowed by law;

f.      Relator's individual damages, if any, which may be alleged; and

g.      All other relief on behalf of Relator or the United States Government to which they may be justly entitled, under law or in equity, and the District Court deems just and proper.

## COUNT VI
## VIOLATIONS OF THE ARKANSAS MEDICAID FCA
### ARK. CODE ANN. § 20-77-902

178.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

179.    This is a *qui tam* action brought by John Doe and the State of Arkansas to recover treble damages and civil penalties under the Arkansas Medicaid False Claims Act, ARK. CODE ANN. §§ 20-77-902.

180.    ARK. CODE ANN. § 20-77-902 provides liability for any person who-

    (1)    Knowingly makes or causes to be made any false statement or representation of a material fact in any application for any benefit or

52

payment under the Arkansas Medicaid program;

(2)     At any time knowingly makes or causes to be made any false statement or representation of a material fact for use in determining rights to a benefit or payment; or

(3)     Having knowledge of the occurrence of any event affecting his or her initial or continued right to any benefit or payment or the initial or continued right to any benefit or payment of any other individual in whose behalf he or she has applied for or is receiving a benefit or payment knowingly conceals or fails to disclose that event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized.

181.    Defendants violated ARK. CODE ANN. § 20-77-902 and knowingly caused false claims to be made, used and presented to the State of Arkansas by their violations of Federal and State laws, including false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

182.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

183.    The State of Arkansas, by and through the Arkansas Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

184.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Arkansas. Had the

State of Arkansas known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

185.    As a result of Defendants' violations of ARK. CODE ANN. § 20-77-902, the State of Arkansas has been damaged.

186.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to ARK. CODE ANN. § 20-77-902 on behalf of himself and the State of Arkansas.

187.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Arkansas in the operation of the Medicaid program.

## PRAYER AS TO COUNT VI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF ARKANSAS:

(1)    Three times the amount of actual damages which the State of Arkansas has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for false claim which Defendants presented or caused to be presented to the State of Arkansas;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to ARK. CODE ANN. § 20-77-911 and/or any other applicable provision of law;

54

(2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)     Such further relief as this Court deems equitable and just.

## COUNT VII
## VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT
### CAL. GOV'T CODE § 12651(a)

188.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

189.    This is a *qui tam* action brought by John Doe and the State of California to recover treble damages and civil penalties under the California False Claims Act, CAL. GOV'T CODE § 12650 *et. seq.*

190.    CAL. GOV'T CODE § 12651(a) provides liability for any person who-

(1)     Knowingly presents, or causes to be presented, to an officer or employee of the state or of any political division thereof, a false claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

(3)     Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision.

191.    Defendants violated CAL. GOV'T CODE § 12651(a)(1)-(3) and knowingly caused false claims to be made, used and presented to the State of California by their violations of Federal and State laws and submitted false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately

55

ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

192.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

193.    The State of California, by and through the California Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

194.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of California.  Had the State of California known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

195.    As a result of Defendants' violations of CAL. GOV'T CODE §12651(a), the State of California has been damaged.

196.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to CAL. GOV'T CODE § 12652(c) on behalf of himself and the State of California.

197.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of California in the operation of the Medicaid program.

## PRAYER AS TO COUNT VII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively,

To the STATE OF CALIFORNIA:

(1)     Three times the amount of actual damages which the State of California has sustained as a result of Defendants' fraudulent and illegal practices;

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of California;

(3)     Pre-judgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     A fair and reasonable amount allowed pursuant to CAL. GOV'T CODE § 12652 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT VIII
## VIOLATIONS OF THE CALIFORNIA INSURANCE FRAUDS PREVENTION ACT
### CAL. INS. CODE § 1871.7(b)

198.     Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

199.    This is a *qui tam* action brought by John Doe and the State of California to recover treble damages and civil penalties under the California Insurance Frauds Prevention Act, CAL. INS. CODE § 1871 *et. seq.*

200.    CAL. INS. CODE § 1871.7(b) provides liability for any person who violates any provision of Section 1871.7 or Section 549, 550, or 551 of the California Penal Code. Violators shall be subject to, in addition to any other penalties prescribed by law, a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation.

201.    CAL. PENAL CODE § 550(b) makes it unlawful to do, knowingly assist or conspire with any person to do, *inter alia*:

      (1)    Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

      (2)    Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

      (3)    Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

      (4)    Prepare or make any written or oral statement, intended to be presented to any insurer or producer for the purpose of obtaining a motor vehicle insurance policy, that the person to be the insured resides or is domiciled in this state when, in fact, that person resides or is domiciled in a state other than this state.

202.    Defendants violated CAL. PENAL CODE § 550(b) and CAL. INS. CODE § 1871.7(b) when they knowingly caused false claims to be made, used and presented to private insurance companies or pharmacy benefit managers ("PBMs"), false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled.   Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

203.    Had the private insurance companies and PBMs known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

204.    As a result of Defendants' violations of CAL. PENAL CODE § 550(b) and CAL. INS. CODE § 1871.7(b), the State of California has been damaged.

205.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to CAL. INS. CODE § 1871 *et. seq.* on behalf of himself and the State of California.

206.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of California under the California Insurance Frauds Prevention Act.

## PRAYER AS TO COUNT VIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF CALIFORNIA:

(1)    Three times the amount of actual damages which the State of California has sustained as a result of Defendants' fraudulent and

illegal practices;

(2)  A civil penalty of not less than $5,000 and not more than $10,000 for false claim which Defendants presented or caused to be presented to private insurance companies or pharmacy benefit managers;

(3)  Pre-judgment interest; and

(4)  All costs incurred in bringing this action.

To RELATOR:

(1)  A fair and reasonable amount allowed pursuant to CAL. INS. CODE § 1871.7(g) and/or any other applicable provision of law;

(2)  Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)  An award of statutory attorneys' fees and costs; and

(4)  Such further relief as this Court deems equitable and just.

## COUNT IX
## VIOLATIONS OF THE COLORADO MEDICAID FALSE CLAIMS ACT
### COLO. REV. STAT. ANN. § 25.5-4-303.5 *et seq.*

207.  Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

208.  This is a *qui tam* action brought by John Doe and the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, COLO. REV. STAT. ANN. § 25.5-4-303.5 *et seq.*

209.  COLO. REV. STAT. ANN § 25.5-4-305 provides liability for any person who, *inter alia*:

(1)  Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

60

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

(3)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act"

(4)     Conspires to commit a violation...

210.    Defendants violated COLO. REV. STAT. ANN. § 25.5-4-305 and knowingly caused false claims to be made, used and presented to the State of Colorado by their violations of Federal and State laws when they submitted false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

211.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

212.    The State of Colorado, by and through the Colorado Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

213.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Colorado. Had the State of Colorado known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

61

214.    As a result of Defendants' violations of COLO. REV. STAT. ANN. § 25.5-4-305, the State of Colorado has been damaged.

215.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to COLO. REV. STAT. ANN. § 25.5-4-305 on behalf of himself and the State of Colorado.

216.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Colorado in the operation of the Medicaid program.

## PRAYER AS TO COUNT IX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF COLORADO:

(1)    Three times the amount of actual damages which the State of Colorado has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of Colorado;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to COLO. REV. STAT. ANN. § 25.5-4-306(3) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT X
## VIOLATIONS OF THE CONNECTICUT FALSE CLAIMS ACT FOR MEDICAL ASSISTANCE PROGRAMS
### CONN. GEN. STAT. ANN. § 17b-301a *et seq.*

217.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

218.    This is a *qui tam* action brought by John Doe and the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act for Medical Assistance Programs, CONN. GEN. STAT. § 17b-301 *et seq.*

219.    CONN. GEN. STAT. ANN. § 17b-301b(a) provides liability for any person who, *inter alia*:

>    (1)     Knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

>    (5)     Knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

>    (6)     Conspire to commit a violation of this section . . . .

220.    Defendants violated CONN. GEN. STAT. ANN. § 17b-301b(a) and knowingly caused false claims to be made, used and presented to the State of Connecticut by their violations of Federal and State laws, when they submitted false or fraudulent claims for payment for drugs and vaccines to which they were not entitled.  Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant

of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

221.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

222.    The State of Connecticut, by and through the Connecticut Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

223.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Connecticut.  Had the State of Connecticut known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

224.    As a result of Defendants' violations of CONN. GEN. STAT. ANN. § 17b-301b(a), the State of Connecticut has been damaged.

225.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to CONN. GEN. STAT. ANN. § 17b-301d(a) on behalf of himself and the State of Connecticut.

226.    This Court is requested to accept pendant jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Connecticut in the operation of the Medicaid program.

## PRAYER AS TO COUNT X

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF CONNECTICUT:

    (1)    Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendants' fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of Connecticut;

    (3)    Pre-judgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to CONN. GEN. STAT. ANN. § 17b-301e(e) and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XI
## VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT
### 6 DEL. CODE ANN. § 1201 *et seq.*

227.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety. and said allegations are incorporated herein by reference.

228.    This is a *qui tam* action brought by John Doe and the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, 6 DEL. CODE ANN. § 1201 *et seq.*

229.    6 DEL. CODE ANN. § 1201(a) provides liability for any person who, *inter alia*:

     (1)    Knowingly presents, or causes to be presented to an officer or employee of the Government a false or fraudulent claim for payment or approval;

     (2)    Knowingly makes, uses or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government;

     (3)    Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

230.    Defendants violated 6 DEL. CODE ANN. § 1201(a) and knowingly caused false claims to be made, used and presented to the State of Delaware by their violations of Federal and State laws when they submitted false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

231.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

232.    The State of Delaware, by and through the Delaware Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

233.    Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of Delaware. Had the State of Delaware known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

234.    As a result of Defendants' violations of 6 DEL. CODE ANN. § 1201(a), the

State of Delaware has been damaged.

235. John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 6 DEL. CODE ANN. § 1203(b) on behalf of himself and the State of Delaware.

236. This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Delaware in the operation of the Medicaid program.

## **PRAYER AS TO COUNT XI**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF DELAWARE:

(1) Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendants' fraudulent and illegal practices;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of Delaware;

(3) Pre-judgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to 6 DEL. CODE ANN. § 1205 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

<u>**COUNT XII**</u>
**VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT REFORM
AMENDMENT ACT**
**D.C. CODE ANN. § 2-381.01 *et seq.* [formerly D.C. CODE ANN. §2-308.13 *et seq.*]**

237.     Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

238.     This is a *qui tam* action brought by John Doe and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. CODE ANN. § 2-381.01 *et seq.*

239.     D.C. CODE ANN. § 2-381.02 provides liability for any person who, *inter alia*:

(1)     Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the District, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the District;

(4)     Conspires to commit a violation of paragraph (1), (2), (3), (4), (5), or (6) of this subsection;

240.     Defendants violated D.C. CODE ANN. § 2-381.02 and knowingly caused false claims to be made, used and presented to the District by their violations of Federal and State laws, including by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately

ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

241. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

242. The District, by and through the District's Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

243. Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the District. Had the District known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

244. As a result of Defendants' violations of D.C. CODE ANN. § 2-381.02 the District has been damaged.

245. John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to D.C. CODE ANN. § 2-381.03 on behalf of himself and the District.

246. This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the District in the operation of the Medicaid program.

## **PRAYER AS TO COUNT XII**

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the DISTRICT OF COLUMBIA:

    (1)    Three times the amount of actual damages which the District of Columbia has sustained as a result of Defendants' fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the District;

    (3)    Pre-judgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to D.C. CODE ANN. § 2-381-03 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XIII
## VIOLATIONS OF THE FLORIDA FALSE CLAIMS ACT
### FLA. STAT. ANN. § 68.081 *et seq.*

247.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

248.    This is a *qui tam* action brought by John Doe and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, FLA. STAT. ANN. § 68.081 *et seq.*

249.    FLA. STAT. ANN. § 68.082(2) provides liability for any person who, *inter alia*:

(1) Knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(3) Conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid.

250. Defendants violated FLA. STAT. ANN. § 68.082(2) and knowingly caused false claims to be made, used and presented to the State of Florida by their violations of Federal and State laws, including by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

251. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

252. The State of Florida, by and through the Florida Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

253. Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Florida. Had the State of Florida known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

71

254.    As a result of Defendants' violations of FLA. STAT. ANN. § 68.082(2) the State of Florida has been damaged.

255.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to FLA. STAT. ANN. § 68.083(2) on behalf of himself and the District.

256.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Florida in the operation of the Medicaid program.

## PRAYER AS TO COUNT XIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF FLORIDA:

(1)    Three times the amount of actual damages which the State of Florida has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the District;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to FLA. STAT. ANN. § 68.085 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

72

(4)     Such further relief as this Court deems equitable and just.

## COUNT XIV
## VIOLATIONS OF THE GEORGIA STATE FALSE MEDICAID CLAIMS ACT
### GA. CODE ANN. § 49-4-168 *et seq.*

257.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

258.    This is a *qui tam* action brought by John Doe and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, GA. CODE ANN. §§ 49-4-168 to 168.6.

259.    GA. CODE ANN. § 49-4-168.1 provides liability for any person who, *inter alia*:

(1)     Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

(3)     Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid.

260.    Defendants violated GA. CODE ANN. § 49-4-168.1 and knowingly caused false claims to be made, used and presented to the State of Georgia by their violations of Federal and State laws, including by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

261. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

262. The State of Georgia, by and through the Georgia Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

263. Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Georgia. Had the State of Georgia known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

264. As a result of Defendants' violations of GA. CODE ANN. § 49-4-168.1 the State of Georgia has been damaged.

265. John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to GA. CODE ANN. § 49-4-168.2(b) on behalf of himself and the State of Georgia.

266. This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Georgia in the operation of the Medicaid program.

## PRAYER AS TO COUNT XIV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF GEORGIA:

(1) Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendants' fraudulent and

74

illegal practices;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of Georgia;

(3) Pre-judgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to GA. CODE ANN. § 49-4-168.2(I) and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XV
## VIOLATIONS OF THE HAWAII FALSE CLAIMS ACT
### HAW. REV. STAT. § 661-21 *et seq.*

267. Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

268. This is a *qui tam* action brought by John Doe and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, HAW. REV. STAT. § 661-21 *et seq.*

269. HAW. REV. STAT. § 661-21 provides liability for any person who, *inter alia*:

(1) Knowingly presents or causes to be presented to an officer or employee of the State a false or fraudulent claim for payment or approval;

75

(2)   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(3)   Conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

270.    Defendants violated HAW. REV. STAT. § 661-21 and knowingly caused false claims to be made, used and presented to the State of Hawaii by their violations of Federal and State laws, including by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

271.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

272.    The State of Hawaii, by and through the Hawaii Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

273.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Hawaii. Had the State of Hawaii known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

274.    As a result of Defendants' violations of HAW. REV. STAT. § 661-21 the State of Hawaii has been damaged.

275.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to HAW. REV. STAT. § 661-25 on behalf of himself and the State of Hawaii.

276.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Hawaii in the operation of the Medicaid program.

### PRAYER AS TO COUNT XV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF Hawaii:

(1)    Three times the amount of actual damages which the State of Hawaii has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of Hawaii;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to HAW. REV. STAT. § 661-27 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XVI
## VIOLATIONS OF THE ILLINOIS FALSE CLAIMS ACT
### 740 ILL. COMP. STAT. § 175 *et seq.*

277.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

278.    This is a *qui tam* action brought by John Doe and the State of Illinois to recover treble damages and civil penalties under the Illinois False Claims Act, 740 ILCS § 175 *et seq.*

279.    740 ILCS § 175/3 provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the Guard a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(3)    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

280.    Defendants violated 740 ILCS § 175/3 and knowingly caused false claims to be made, used and presented to the State of Illinois by their violations of Federal and State laws, including 305 ILCS 5/8A-3(b),  and by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

281.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent

claim for payment under the FCA.

282.    The State of Illinois, by and through the Illinois Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

283.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Illinois.  Had the State of Illinois known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

284.    As a result of Defendants' violations of 740 ILCS § 175/3, the State of Illinois has been damaged.

285.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 740 ILCS § 175/4(b) on behalf of himself and the State of Illinois.

286.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Illinois in the operation of the Medicaid program.

## PRAYER AS TO COUNT XVI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF Illinois:

(1)    Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be

presented to the State of Illinois;

(3)     Pre-judgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     A fair and reasonable amount allowed pursuant to 740 ILCS § 175/4(d) and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XVII
## VIOLATIONS OF THE ILLINOIS INSURANCE CLAIMS FRAUD PREVENTION ACT
### 740 ILL. COMP. STAT. 92/1 *et seq.*

287.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

288.    This is a *qui tam* action brought by John Doe and the State of Illinois to recover treble damages and civil penalties under the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*

289.    740 ILCS 92/1 provides liability for any person who violates any provision of Section 92/1 or Section 17-8.5 or 10.5 of the Criminal Code of 1961 or 2012, or Article 46 of the Criminal Code of 1961. Violators shall be subject, in addition to any other penalties prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation.

80

290. ILL. CRIM. CODE § 17-10.5(a) states:

    (1)    A person commits insurance fraud when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company or by the making of a false claim or by causing a false claim to be made to a self-insured entity, intending to deprive an insurance company or self-insured entity permanently of the use and benefit of that property

    (2)    A person commits health care benefits fraud against a provider, other than a governmental unit or agency, when he or she knowingly obtains or attempts to obtain, by deception, health care benefits and that obtaining or attempt to obtain health care benefits does not involve control over property of the provider.

291. "Deception" means knowingly to:

    (1) Create or confirm another's impression which is false and which the offender does not believe to be true; or

    (2) Fail to correct a false impression which the offender previously has created or confirmed; or

    (3) Prevent another from acquiring information pertinent to the disposition of the property involved; or

    (4) Sell or otherwise transfer or encumber property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, or is or is not a matter of official record; or

    (5) Promise performance which the offender does not intend to perform or knows will not be performed. Failure to perform standing alone is not evidence that the offender did not intend to perform.

292. Defendants violated 740 ILCS § 92/1 and ILL. CRIM. CODE § 17-10.5(a) when they knowingly caused false claims to be made, used and presented to private insurance companies or PBMs, false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these

81

claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

293.    Had the private insurance companies and PBMs known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

294.    As a result of Defendants' violations of 740 ILCS 92/1 and ILL. CRIM. CODE § 17-10.5(a), the State of Illinois has been damaged.

295.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 740 ILCS § 92/15 on behalf of himself and the State of Illinois.

296.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Illinois under the Illinois Insurance Claims Fraud Prevention Act.

## **PRAYER AS TO COUNT XVII**

297.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF Illinois:

(1)    Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants presented or caused to be presented to private insurance companies or pharmacy benefit managers;

(3)    Pre-judgment interest; and

82

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     A fair and reasonable amount allowed pursuant to 740 ILCS 92/25 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XVIII
## VIOLATIONS OF THE INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT
### IND. CODE ANN. § 5-11-5.5-1 *et seq.*

298.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

299.    This is a *qui tam* action brought by John Doe and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, IND. CODE ANN. § 5-11-5.5-1 *et seq.*

300.    IND. CODE ANN. § 5-11-5.5-1 provides liability for any person who, *inter alia*, knowingly or intentionally:

(1)     presents a false claim to the state for payment or approval;

(2)     Makes or uses a false record or statement to obtain payment or approval of a false claim from the State;

* * *

(7)     Conspires with another person to perform an act described in subdivisions (1) through (6); or

83

(8)    Causes or induces another person to perform an act described in subdivisions (1) through (6). . . .

301.    Defendants violated IND. CODE ANN. § 5-11-5.5-1 and knowingly caused false claims to be made, used and presented to the State of Indiana by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

302.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

303.    The State of Indiana, by and through the Indiana Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

304.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Indiana. Had the State of Indiana known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

305.    As a result of Defendants' violations of IND. CODE ANN. § 5-11-5.5-1, the State of Indiana has been damaged.

306.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to IND. CODE ANN. § 5-11-5.5-4 on behalf of himself and the State of Indiana.

84

307.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Indiana in the operation of the Medicaid program.

## PRAYER AS TO COUNT XVIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF INDIANA:

(1)    Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of at least $5,000 for each false claim which Defendants presented or caused to be  presented to the State of Indiana;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(5)    A fair and reasonable amount allowed pursuant to IND. CODE ANN. § 5-11-5.5-6 and/or any other applicable provision of law;

(6)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(7)    An award of statutory attorneys' fees and costs; and

(8)    Such further relief as this Court deems equitable and just.

## COUNT XIX
## VIOLATIONS OF THE IOWA FALSE CLAIMS ACT
### IOWA CODE ANN. § 685.2 *et seq.*

308.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

309.    This is a *qui tam* action brought by John Doe and the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Act, IOWA CODE ANN. § 685.2 *et seq.*

310.    IOWA CODE ANN. § 685.2 provides liability for any person who, *inter alia*:

    (1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.

    (2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

    (3)    Conspires to commit a violation of...

311.    Defendants violated IOWA CODE ANN. § 685.2 and knowingly caused false claims to be made, used and presented to the State of Indiana by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

312.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

313. The State of Iowa, by and through the Iowa Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

314. Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Iowa. Had the State of Iowa known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

315. As a result of Defendants' violations of IOWA CODE ANN. § 685.2, the State of Iowa has been damaged.

316. John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to IOWA CODE ANN. § 685.3(2) on behalf of himself and the State of Iowa.

317. This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Iowa in the operation of the Medicaid program.

## PRAYER AS TO COUNT XIX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF IOWA:

 (1) Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendants' fraudulent and illegal practices;

 (2) Civil penalties against the Defendant, respectively, equal to not less than $5,000 and not more than $10,000, adjusted for inflation according to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, for each violation of 31 U.S.C. § 3729, as

87

prescribed by IOWA CODE ANN. § 685.2(1);

   (3)     Pre-judgment interest; and

   (4)     All costs incurred in bringing this action.

To RELATOR:

   (1)     A fair and reasonable amount allowed pursuant to IOWA CODE ANN. § 685.3(4) and/or any other applicable provision of law;

   (2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

   (3)     An award of statutory attorneys' fees and costs; and

   (4)     Such further relief as this Court deems equitable and just.

## COUNT XX
## VIOLATIONS OF THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW
## LA. REV. STAT. § 46:437.1 *et seq.*

318.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

319.    This is a *qui tam* action brought by John Doe and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. § 46:437.1 *et seq.*

320.    LA. REV. STAT. § 46:437.3 provides *inter alia*:

   (1)     No person shall knowingly present or cause to be presented a false or fraudulent claim;

   (2)     No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds;

   (3)     No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent

88

claim. . . .

321.    Defendants violated LA. REV. STAT. § 46:437.3 when they knowingly caused false claims to be made, used and presented to the State of Louisiana by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled.  Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

322.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

323.    The State of Louisiana, by and through the Louisiana Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

324.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Louisiana.  Had the State of Louisiana known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

325.    As a result of Defendants' violations of violated LA. REV. STAT. § 46:437.3, the State of Louisiana has been damaged.

326.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to LA. REV. STAT. § 46:439.1(A) on behalf of himself and the State of Louisiana.

327. This Court is requested to accept pendant jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Louisiana in the operation of the Medicaid program.

## PRAYER AS TO COUNT XX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF LOUISIANA:

(1) Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendants' fraudulent and illegal practices;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants to be presented to the State of Louisiana;

(3) Pre-judgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXI
## VIOLATIONS OF THE MARYLAND FALSE HEALTH CLAIMS ACT
### MD. HEALTH-GEN. CODE ANN.  § 2-601 *et seq.*

328.     Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

329.     This is a *qui tam* action brought by John Doe and the State of Maryland to recover treble damages and civil penalties under the Maryland False Health Claims Act, MD. HEALTH-GEN. CODE ANN. § 2-601 *et seq.*

330.     MD. HEALTH-GEN. CODE ANN. § 2-602 provides that a person may not, *inter alia*:

(1)     Knowingly present or cause to be presented a false or fraudulent claim for payment or approval;

(2)     Knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim;

(3)     Conspire to commit a violation under this subtitle;

(4)     Knowingly make any other false or fraudulent claim against a State health plan or a State health program.

331.     Defendants violated MD. HEALTH-GEN. CODE ANN. § 2-602 when they knowingly caused false claims to be made, used and presented to the State of Louisiana by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

332.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

333.    The State of Maryland, by and through the Maryland Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

334.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Maryland.  Had the State of Maryland known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

335.    As a result of Defendants' violations of violated MD. HEALTH-GEN. CODE ANN. § 2-602, the State of Maryland has been damaged.

336.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MD. HEALTH-GEN. CODE ANN. § 2-604(a) on behalf of himself and the State of Maryland.

337.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Maryland in the operation of the Medicaid program.

### PRAYER AS TO COUNT XXI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF MARYLAND:

(1)    Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendants' fraudulent and

illegal practices;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants to be presented to the State of Maryland;

(3) Pre-judgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to MD. HEALTH-GEN. CODE ANN. § 2-605 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXII
## VIOLATIONS OF THE MASSACHUSETTS FALSE CLAIMS ACT
### MASS. GEN. LAWS ANN. ch. 12 § 5A *et seq.*

338. Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

339. This is a *qui tam* action brought by John Doe and the State of Massachusetts to recover treble damages and civil penalties under the Massachusetts False Claims Law, MASS. GEN. LAWS ANN. ch. 12 § 5A *et seq.*

340. MASS. GEN. LAWS ANN. ch. 12 § 5B provides liability for any person who:

(1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

(3)    Conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

(4)    Is a beneficiary of an inadvertent submission of a false claim to the commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

341.    Defendants violated MASS. GEN. LAWS ANN. ch. 12 § 5B § 2-602 when they knowingly caused false claims to be made, used and presented to the State of Massachusetts by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

342.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

343.    The State of Massachusetts, by and through the Massachusetts Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

344.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Massachusetts. Had the State of Massachusetts known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

345.    As a result of Defendants' violations of MASS. GEN. LAWS ANN. ch. 12 § 5B the State of Massachusetts has been damaged.

346.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MASS. GEN. LAWS ANN. ch. 12 § 5C(2) on behalf of himself and the State of Massachusetts.

347.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Massachusetts in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF MASSACHUSETTS:

(1)    Three times the amount of actual damages which the State of Massachusetts has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants to be presented to the State of Massachusetts;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to MASS. GEN. LAWS ANN. ch. 12 § 5F and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXIII
## VIOLATIONS OF THE MICHIGAN MEDICAID FALSE CLAIMS ACT
### MICH. COMP. LAWS § 400.601 *et seq.*

348.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

349.    This is a *qui tam* action brought by John Doe and the State of Michigan to recover treble damages and civil penalties under the Michigan Medicaid False Claims Act, MICH. COMP. LAW § 400.601 *et seq.*

350.    MICH. COMP. LAW § 400.603 states:

(1)     A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for Medicaid benefits.

(2)     A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit.

(3)     A person, who having knowledge of the occurrence of an event affecting his initial or continued right to receive a Medicaid benefit or the initial or continued right of any other person on whose behalf he has applied for or is receiving a benefit, shall not conceal or fail to disclose that event with intent to obtain a benefit to which the person or any other person is not entitled or in an amount greater than that to which the person or any other person is entitled.

351.    MICH. COMP. LAWS § 400.606 states:

(1)     A person shall not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws.

96

352.    MICH. COMP. LAWS § 400.607 states:

(1)    A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false.

353.    Defendants violated MICH. COMP. LAW § 400.603, MICH. COMP. LAW § 400.604, MICH. COMP. LAW § 400.606, and MICH. COMP. LAW § 400.607 when they knowingly caused false claims to be made, used and presented to the State of Massachusetts by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

354.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

355.    The State of Michigan, by and through the Michigan Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

356.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Michigan. Had the State of Michigan known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

357.    As a result of Defendants' violations of MICH. COMP. LAW §§ 400.603, 400.604, 400.606, and 400.607, the State of Michigan has been damaged.

97

358.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MICH. COMP. LAW § 400.610a on behalf of himself and the State of Michigan.

359.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Michigan in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF MICHIGAN:

(1)    Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants to be presented to the State of Michigan;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to MICH. COMP. LAW § 400.610a and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXIV
### VIOLATIONS OF THE MINNESOTA FALSE CLAIMS ACT
### MINN. STAT. § 15C.01 *et seq.*

360. Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

361. This is a *qui tam* action brought by John Doe and the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, MINN. STAT. § 15C.01 *et seq.*

362. MINN. STAT. § 15C.02 creates liability for any person who, *inter alia*:

    (1)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (2)    knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    (3)    knowingly conspires to commit a violation of [this section] . . .

363. Defendants violated MINN. STAT. § 15C.02 when they knowingly caused false claims to be made, used and presented to the State of Minnesota by their violations of Federal and State laws by submitting false or fraudulent claims for payment for d prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

364. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

365.    The State of Minnesota, by and through the Minnesota Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

366.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Minnesota. Had the State of Minnesota known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

367.    As a result of Defendants' violations of MINN. STAT. § 15C.02, the State of Minnesota has been damaged.

368.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MINN. STAT. § 15C.05 on behalf of himself and the State of Minnesota.

369.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Minnesota in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXIV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF MINNESOTA:

(1)    Three times the amount of actual damages which the State of Minnesota has sustained as a result of each Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants to be presented to the State of Minnesota;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to MINN. STAT. § 15C.05 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

**COUNT XXV**
**VIOLATIONS OF THE MONTANA FALSE CLAIMS ACT**
**MONT. CODE. ANN. § 17-8-401 *et seq.***

370.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

371.    This is a *qui tam* action brought by John Doe and the State of Montana to recover treble damages and civil penalties under the Montana False Claims Act, MONT. CODE. ANN. § 17-8-401 *et seq.*

372.    MONT. CODE ANN. § 17-8-403(1) creates liability for any person who, *inter alia*:

(1)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2)    knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)    conspires to commit a violation of this subsection (1)

(4)    knowingly makes or uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit

101

> money or property to a governmental entity or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to a governmental entity

373. Defendants violated MONT. CODE ANN. § 17-8-403(1) and MONT. CODE. ANN. § 45-6-313 when they knowingly caused false claims to be made, used and presented to the State of Minnesota by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

374. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

375. The State of Montana, by and through the Montana Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

376. Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Montana. Had the State of Montana known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

377. As a result of Defendants' violations of MONT. CODE ANN. § 17-8-403(1), the State of Montana has been damaged.

378.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to MONT. CODE ANN. § 17-8-406 on behalf of himself and the State of Montana.

379.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Montana in the operation of the Medicaid program.

### PRAYER AS TO COUNT XXV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF MONTANA:

(1)    Three times the amount of actual damages which the State of Montana has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants to be presented to the State of Montana;

(3)    Pre=judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to MONT. CODE ANN. § 17-8-410 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVI
### VIOLATIONS OF THE NEVADA FALSE CLAIMS ACT
### NEV. REV. STAT. ANN. § 357.010 *et seq.*
### *as amended by* 2013 Nev. Laws Ch. 245 (S.B. 437) effective July 1, 2013

380.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

381.    This is a *qui tam* action brought by John Doe and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, NEV. REV. STAT. ANN. § 357.010 *et seq.*

382.    NEV. REV. STAT. ANN. § 357.040 provides liability for any person who, *inter alia*:

        (1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.

        (2)    Knowingly makes or uses, or causes to be made or used, a false record or statement that is material to a false or fraudulent claim;

        (3)    Knowingly makes or uses, or causes to be made or used, a false record or statement that is material to an obligation to pay or transmit money or property to the state or a political subdivision

        (4)    Conspires to commit any acts set forth in this subsection

383.    In addition, NEV. REV. STAT. ANN. § 422.560 prohibits any person from selling or leasing to or for use of a provider goods, services, materials, or supplies for which payment may be made under the Nevada Medicaid program, and offer, transfer, or pay anything of value in return for or in connection with the purchase or lease.

384.    Defendants violated NEV. REV. STAT. ANN. § 357.040 and NEV. REV. STAT. ANN. § 422.560 when they knowingly caused false claims to be made, used and presented

to the State of Nevada by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

385.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

386.    The State of Nevada, by and through the Nevada Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

387.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Nevada. Had the State of Nevada known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

388.    As a result of Defendants' violations of NEV. REV. STAT. ANN. § 357.040 and NEV. REV. STAT. ANN. § 422.560, the State of Nevada has been damaged.

389.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to NEV. REV. STAT. ANN. § 357.080 on behalf of himself and the State of Nevada.

390.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Nevada in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXVI

WHEREFORE, Relator respectfully requests this Court to award the following

damages to the following parties and against Defendants, respectively:

To the STATE OF NEVADA:

    (1)    Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendants' fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants to be presented to the State of Nevada;

    (3)    Pre-judgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to NEV. REV. STAT. ANN. § 357.180 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XXVII
## VIOLATIONS OF THE NEW HAMPSHIRE FALSE CLAIMS ACT
### N.H. REV. STAT. ANN. § 167:61 *et seq.*

391.    Relator restates and realleges the allegations contained in the preceding

paragraphs as if were stated herein in their entirety, and said allegations are incorporated

herein by reference.

392.    This is a *qui tam* action brought by John Doe and the State of New

Hampshire to recover treble damages and civil penalties under the New Hampshire False

Claims Act, N.H. REV. STAT. ANN. § 167:61 *et seq.*

393.    N.H. REV. STAT. ANN. § 167:61-a(1) states no person shall:

(1)    Knowingly make, present or cause to be made or presented, with intent to defraud, any false or fraudulent claim for payment for any good, service, or accommodation for which payment may be made in whole or in part under RSA 161 or RSA 167;

(2)    Knowingly make, present, or cause to be made or presented, with intent to defraud, any false or fraudulent statement or representation for use in determining rights to benefits or payments which may be made in whole or in part under RSA 161 or RSA 167;

(3)    Knowingly make, present, or cause to be made or presented, with intent to defraud, any false or fraudulent report or filing which is or may be used in computing or determining a rate of payment for goods, services, or accommodations for which payment may be made in whole or in part under RSA 161 or RSA 167; or make, present, or cause to be made or presented any false or fraudulent statement or representation in connection with any such report or filing;

(4)    Knowingly make, present, or cause to be made or presented, with intent to defraud, any claim for payment, for any good, service, or accommodation for which payment may be made in whole or in part under RSA 161 or RSA 167, which is not medically necessary in accordance with professionally recognized standards.

(5)    Knowingly solicit or receive any remuneration, including any bribe or rebate, directly, or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, leasing, ordering, or arranging for or recommending the purchase, lease, or ordering of any good, service, accommodation or facility for which payment may be made in whole or in part under RSA 161 or RSA 167, or knowingly offering to pay any remuneration, including any bribe or rebate, directly, or indirectly, overtly or covertly, in cash or in kind, to induce a person to purchase, lease, order, or arrange for or recommend the purchase, lease, or ordering of any good, service, accommodation of facility for which payment may be made in whole or in part under RSA 161 or RSA 167 . . .

394.    Defendants violated N.H. REV. STAT. ANN. § 167:61-a(1) when they knowingly caused false claims to be made, used and presented to the State of New

Hampshire by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

395.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

396.    The State of New Hampshire, by and through the New Hampshire Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

397.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of New Hampshire. Had the State of New Hampshire known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

398.    As a result of Defendants' violations of N.H. REV. STAT. ANN. § 167:61-a(1), the State of New Hampshire has been damaged.

399.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.H. REV. STAT. ANN. § 167:61-c on behalf of himself and the State of New Hampshire.

400.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New Hampshire in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXVII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF NEW HAMPSHIRE:

    (1)    Three times the amount of actual damages which the State of New Hampshire has sustained as a result of Defendants' fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants to be presented to the State of New Hampshire;

    (3)    Pre-judgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to N.H. REV. STAT. ANN. § 167:61-e and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XXVIII
## VIOLATIONS OF THE NEW JERSEY FALSE CLAIMS ACT
### N.J. STAT. ANN. § 2A:32C-1 *et seq.*

401.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

402.    This is a *qui tam* action brought by John Doe and the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J.

STAT. ANN. § 2A:32C-1 *et seq.*

403.   N.J. STAT. ANN. § 2A:32C-3 states no person shall:

   (1)   Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

   (2)   Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

   (3)   Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

404.   Defendants violated N.J. STAT. ANN. § 2A:32C-3 when they knowingly caused false claims to be made, used and presented to the State of New Jersey by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled.  Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

405.   Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

406.   The State of New Jersey, by and through the New Jersey Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

407.   Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of New Jersey.  Had the

State of New Jersey known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

408.    As a result of Defendants' violations of N.J. STAT. ANN. § 2A:32C-3,the State of New Jersey has been damaged.

409.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.J. STAT. ANN. § 2A:32C-5 on behalf of himself and the State of New Jersey.

410.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New Jersey in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXVIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF NEW JERSEY:

(1)    Three times the amount of actual damages which the State of New Jersey has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000, adjusted for inflation according to N.J. STAT. ANN. § 2A:32C-3, for each false claim which Defendants to be presented to the State of New Jersey;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to N.J. STAT. ANN. § 2A:32C-7 and/or any other applicable provision of law;

111

(2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

### COUNT XXIX
### VIOLATIONS OF THE NEW MEXICO MEDICAID FALSE CLAIMS ACT
### N.M. STAT. ANN. § 27-14-1 *et seq.*

411.   Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

412.   This is a *qui tam* action brought by John Doe and the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-1 *et seq.*

413.   N.M. STAT. ANN. § 27-14-4 provides liability for any person who, *inter alia*:

(1)     Presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent;

(2)     Makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

(3)     Conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent.

414.   N.M. STAT. ANN. § 44-9-3 makes it illegal to, *inter alia*:

(1)     Knowingly present, or cause to be presented, to an employee, officer or agent of the state or to a contractor, grantee or other recipient of state funds a false or fraudulent claim for payment or approval;

112

(2) Knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;

(3) Conspire to defraud the state by obtaining approval or payment on a false or fraudulent claim;

(4) Conspire to make, use or cause to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state;

(5) As a beneficiary of an inadvertent submission of a false claim and having subsequently discovered the falsity of the claim, fail to disclose the false claim to the state within a reasonable time after discovery.

415. Defendants violated N.M. STAT. ANN. § 27-14-4 and § 44-9-3 when they knowingly caused false claims to be made, used and presented to the State of New Mexico by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

416. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

417. The State of New Mexico, by and through the New Mexico Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

418. Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of New Mexico. Had the

State of New Mexico known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

419.    As a result of Defendants' violations of N.M. STAT. ANN. § 27-14-4 and § 44-9-3, the State of New Mexico has been damaged.

420.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.M. STAT. ANN. § 27-14-7 and § 44-9-5 on behalf of himself and the State of New Mexico.

421.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New Mexico in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXIX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF NEW MEXICO:

(1)    Three times the amount of actual damages which the State of New Mexico has sustained as a result of each Defendant's fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000, for false claim which Defendants to be presented to the State of New Mexico;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to N.M. STAT. ANN. § 27-14-9, 44-9-7 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred

in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

### COUNT XXX
### VIOLATIONS OF THE NEW YORK FALSE CLAIMS ACT
### N.Y. STATE FIN. § 187 *et seq.*

422.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

423.    This is a *qui tam* action brought by John Doe and the State of New York to recover treble damages and civil penalties under the New York False Claims Act, N.Y. STATE FIN. § 187 *et seq.*

424.    N.Y. STATE FIN. § 189 provides liability for any person who, *inter alia*:

(1)     Knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)     Conspires to commit a violation of . . . this subdivision . . .

425.    Defendants violated N.Y. STATE FIN. § 189 when they knowingly caused false claims to be made, used and presented to the State of New York by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

426.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

427.    The State of New York, by and through the New York Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

428.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of New York. Had the State of New York known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

429.    As a result of Defendants' violations of N.Y. STATE FIN. § 189, the State of New York has been damaged.

430.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.Y. STATE FIN. § 190(2) on behalf of himself and the State of New York.

431.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of New York in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF NEW YORK:

(1)    Three times the amount of actual damages which the State of New York has sustained as a result of Defendants' fraudulent and illegal

116

practices;

(2)    A civil penalty of not less than $6,000 and not more than $12,000, for each false claim which Defendants to be presented to the State of New York;

(3)    Prjudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to N.Y. STATE FIN. § 190 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXI
## VIOLATIONS OF THE NORTH CAROLINA FALSE CLAIMS ACT
### N.C. GEN. STAT. § 1-605 *et seq.*

432.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

433.    This is a *qui tam* action brought by John Doe and the State of North Carolina to recover treble damages and civil penalties under the North Carolina False Claims Act, N.C. GEN. STAT. § 1-605 *et seq.*

434.    N.C. GEN. STAT. § 1-607 provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval.

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

(3)    Conspires to commit a violation of . . . this section.

117

435. Defendants violated N.C. GEN. STAT. § 1-607 when they knowingly caused false claims to be made, used and presented to the State of North Carolina by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

436. Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

437. The State of North Carolina, by and through the North Carolina Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

438. Compliance with applicable Medicaid, and various other Federal and State laws was a condition of payment of claims submitted to the State of North Carolina. Had the State of North Carolina known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

439. As a result of Defendants' violations of N.C. GEN. STAT. § 1-607, the State of North Carolina has been damaged.

440. John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to N.C. GEN. STAT. § 1-608(b) on behalf of himself and the State of North Carolina.

441.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of North Carolina in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF NORTH CAROLINA:

(1)    Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,500 and not more than $11,000, for each false claim which Defendants to be presented to the State of North Carolina;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to N.C. GEN. STAT. § 1-610 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXII
## VIOLATIONS OF THE OKLAHOMA MEDICAID FALSE CLAIMS ACT
### 63 OKL. ST. ANN. § 5053 *et seq.*

442.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety. and said allegations are

119

incorporated herein by reference.

443.   This is a *qui tam* action brought by John Doe and the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma False Claims Act, 63 OKL. ST. ANN. § 5053 *et seq.*

444.   63 OKL. ST. ANN. § 5053.1 provides liability for any person who, *inter alia*:

    (1)   Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

    (2)   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

    (3)   Conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

445.   The Oklahoma Medicaid Program Integrity Act, 56 OKL. STAT. ANN. § 1005 makes it unlawful to willfully and knowingly, *inter alia*:

    (1)   Make or cause to be made a claim, knowing the claim to be false, in whole or in part, by commission or omission;

    (2)   Make or cause to be made a statement or representation for use in obtaining or seeking to obtain authorization to provide a good or a service knowing the statement or representation to be false, in whole or in part, by commission or omission;

    (3)   Make or cause to be made a statement or representation for use by another in obtaining a good or a service under the Oklahoma Medicaid Program, knowing the statement or representation to be false, in whole or in part, by commission or omission;

    (4)   Make or cause to be made a statement or representation for use in qualifying as a provider of a good or a service under the Oklahoma Medicaid Program, knowing the statement or representation to be false, in whole or in part, by commission or omission;

    (5)   Charge any recipient or person acting on behalf of a recipient, money or other consideration in addition to or in excess of rates of remuneration established under the Oklahoma Medicaid Program;

(6)     Solicit or accept a benefit, pecuniary benefit, or kickback in connection with goods or services paid or claimed by a provider to be payable by the Oklahoma Medicaid Program; or

(7)     Having submitted a claim for or received payment for a good or a service under the Oklahoma Medicaid Program, fail to maintain or destroy such records as required by law or the rules of the Oklahoma Health Care Authority for a period of at least six (6) years following the date on which payment was received.

446.     Defendants violated 63 OKL. STAT. ANN. § 5053.1 and 56 OKL. STAT. ANN. § 1005 when they knowingly caused false claims to be made, used and presented to the State of Oklahoma by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

447.     Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

448.     The State of Oklahoma, by and through the Oklahoma Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

449.     Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Oklahoma. Had the State of Oklahoma known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

450.    As a result of Defendants' violations of 63 OKL. STAT. ANN. § 5053.1 and 56 OKL. STAT. ANN. § 1005 the State of Oklahoma has been damaged.

451.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 63 OKL. STAT. ANN. § 5053.2 on behalf of himself and the State of Oklahoma.

452.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Oklahoma in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF OKLAHOMA:

(1)    Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000, for each false claim which Defendants to be presented to the State of Oklahoma;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to 63 OKL. STAT. ANN. § 5053.4 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

122

(4)     Such further relief as this Court deems equitable and just.

**COUNT XXXIII**
**VIOLATIONS OF THE RHODE ISLAND STATE FALSE CLAIMS ACT**
**R.I. GEN. LAWS § 9-1.1-1 *et seq.***

453.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

454.    This is a *qui tam* action brought by John Doe and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island State False Claims Act, R.I. GEN. LAWS § 9-1.1-1 *et seq.*

455.    R.I. GEN. LAW § 9-1.1-3 provides liability for any person who, *inter alia*:

> (1)     Knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

> (2)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

> (3)     Conspires to commit a violation of [this section] . . .

456.    Defendants violated R.I. GEN. LAW § 9-1.1-3 when they knowingly caused false claims to be made, used and presented to the State of Rhode Island by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

123

457.     Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

458.     The State of Rhode Island, by and through the Rhode Island Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

459.     Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Rhode Island.  Had the State of Rhode Island known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

460.     As a result of Defendants' violations of R.I. GEN. LAW § 9-1.1-3 the State of Rhode Island has been damaged.

461.     John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to R.I. GEN. LAW § 9-1.1-4(b) on behalf of himself and the State of Rhode Island.

462.     This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Rhode Island in the operation of the Medicaid program.

### PRAYER AS TO COUNT XXXIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF RHODE ISLAND:

(1)     Three times the amount of actual damages which the State of Rhode

124

Island has sustained as a result of Defendants' fraudulent and illegal practices;

(2)     A civil penalty of not less than $5,500 and not more than $11,000, for each false claim which Defendants to be presented to the State of Rhode Island;

(3)     Pre-judgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     A fair and reasonable amount allowed pursuant to R.I. GEN. LAW § 9-1.1-4(d) and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXXIV
## VIOLATIONS OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT
### TENN. CODE ANN. § 71-5-181 *et seq.*

463.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

464.    This is a *qui tam* action brought by John Doe and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-181 *et seq.*

465.    TENN. CODE ANN. § 71-5-182(a)(1) provides liability for any person who, *inter alia*:

125

(1)   Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval under the Medicaid program;

(2)   Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim under the Medicaid program;

(3)   Conspires to commit a violation of subdivision (a)(1)(A), (a)(1)(B), or (a)(1)(D); or

(4)   Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money, or property to the state, or knowingly conceals, or knowingly and improperly, avoids, or decreases an obligation to pay or transmit money or property to the state, relative to the Medicaid program

466.   Defendants violated TENN. CODE ANN. § 71-5-182(a)(1) when they knowingly caused false claims to be made, used and presented to the State of Tennessee by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

467.   Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

468.   The State of Tennessee, by and through the Tennessee Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

469.   Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Tennessee. Had the

State of Tennessee known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

470. As a result of Defendants' violations of TENN. CODE ANN. § 71-5-182(a)(1), the State of Tennessee has been damaged.

471. John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to TENN. CODE ANN. § 71-5-183(a)(1) on behalf of himself and the Tennessee.

472. This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Tennessee in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXIV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF TENNESSEE:

(1) Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendants' fraudulent and illegal practices;

(2) A civil penalty of not less than $5,000 and not more than $25,000, adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, in accordance with TENN. CODE ANN. § 71-5-182(a), for each false claim which Defendants to be presented to the State of Tennessee;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to TENN. CODE ANN. § 71-5-183(c) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXV
## VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION LAW
### TEX. HUM. RES. CODE ANN. § 36.001 *et seq.*

473.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

474.    This is a *qui tam* action brought by John Doe and the State of Texas to recover treble damages and civil penalties under the Texas Medicaid Fraud Prevention Law, TEX. HUM. RES. CODE ANN. § 36.001 *et seq.*

475.    TEX. HUM. RES. CODE ANN. § 36.002 provides liability for any person who, *inter alia*:

(1)    knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(2)    knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(3)    knowingly applies for and receives a benefit or payment on behalf of another person under the Medicaid program and converts any part

of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received;

(4)   except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

(5)   conspires to commit a violation of [this section]

476.   Defendants violated TEX. HUM. RES. CODE ANN. § 36.002 when they knowingly caused false claims to be made, used and presented to the State of Texas by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

477.   Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

478.   The State of Texas, by and through the Texas Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

479.   Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Texas. Had the State of Texas known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

129

480.    As a result of Defendants' violations of TEX. HUM. RES. CODE ANN. § 36.002, the State of Texas has been damaged.

481.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to TEX. HUM. RES. CODE ANN. § 36.101 on behalf of himself and the State of Texas.

482.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Texas in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXV

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF TEXAS:

(1)    Three times the amount of actual damages which the State of Texas has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty as described in TEX. HUM. RES. CODE ANN. § 36.025(a)(3), for each false claim which Defendants to be presented to the state of Texas;

(3)    Pre-judgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    A fair and reasonable amount allowed pursuant to TEX. HUM. RES. CODE ANN. § 36.110 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)    An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXXVI
## VIOLATIONS OF THE UTAH FALSE CLAIMS ACT
### UTAH CODE § 260-20 *et seq.*

483.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

484.    This is a *qui tam* action brought by John Doe and the State of Utah to recover treble damages and civil penalties under the Utah False Claims Act, UTAH CODE § 260-20 *et seq.*

485.    UTAH CODE § 260-20-3 states, *inter alia*:

(1)     A person may not make or cause to be made a false statement or false representation of a material fact in an application for medical benefits;

(2)     A person may not make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medical benefit...

486.    UTAH CODE § 260-20-6 provides that "[a] person may not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false, fictitious, or fraudulent claim for a medical benefit."

487.    UTAH CODE § 260-20-7 states:

(1)     A person may not make or present or cause to be made or presented to an employee or officer of the state a claim for a medical benefit:

(a) which is wholly or partially false, fictitious, or fraudulent;

(b) for services which were not rendered or for items or materials which were not delivered;

131

(c) which misrepresents the type, quality, or quantity of items or services rendered;

(d) representing charges at a higher rate than those charged by the provider to the general public;

(e) for items or services which the person or the provider knew were not medically necessary in accordance with professionally recognized standards;

(f) which has previously been paid;

(g) for services also covered by one or more private sources when the person or provider knew of the private sources without disclosing those sources on the claim; or

(h) where a provider:

(i) unbundles a product, procedure, or group of procedures usually and customarily provided or performed as a single billable product or procedure into artificial components or separate procedures; and

(ii) bills for each component of the product, procedure, or group of procedures:

(A) as if they had been provided or performed independently and at separate times; and

(B) the aggregate billing for the components exceeds the amount otherwise billable for the usual and customary single product or procedure.

(2)     In addition to the prohibitions of Subsection (1), a person may not:

(a) fail to credit the state for payments received from other sources;

(b) recover or attempt to recover payment in violation of the provider agreement from:

(i) a recipient under a medical benefit program; or (ii) the recipient's family;

(c) falsify or alter with the intent to deceive, any report or document required by state or federal law, rule, or Medicaid provider agreement;

132

(d) retain any unauthorized payment as a result of acts described by this section; or

(e) aid or abet the commission of any act prohibited by this section.

488.    Defendants violated UTAH CODE § 260-20 when they knowingly caused false claims to be made, used and presented to the State of Utah by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled.  Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

489.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

490.    The State of Utah by and through the Utah Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

491.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Utah.  Had the State of Utah known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

492.    As a result of Defendants' violations of UTAH CODE § 260-20, the State of Utah has been damaged.

493.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to UTAH CODE § 260-20 on behalf of himself and the State of Utah.

494.    This Court is requested to accept pendant jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Utah in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXVI

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF UTAH:

(1)    Three times the amount of actual damages which the State of Utah has sustained as a result of Defendants' fraudulent and illegal practices;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants presented or caused to be presented to the State of Utah;

(3)    Full and complete restitution to the state of all damages that the state sustained;

(4)    Any civil penalties as part of criminal and civil judgments;

(5)    Pre-judgment interest; and

(6)    All costs incurred in bringing this action.

To RELATOR:

(5)    A fair and reasonable amount allowed pursuant to UTAH CODE § 260-20A-606 and/or any other applicable provision of law;

(6)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

134

(7)    An award of statutory attorneys' fees and costs; and

(8)    Such further relief as this Court deems equitable and just.

## COUNT XXXVII
## VIOLATIONS OF THE VERMONT FALSE CLAIMS ACT
### VERMONT FALSE CLAIMS ACT 32 V.S.A. § 630 *et seq.*

495.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

496.    This is a *qui tam* action brought by John Doe and the State of Vermont to recover treble damages and civil penalties under the Vermont False Claims Act, 32 V.S.A. § 630 *et seq.*

497.    32 V.S.A. § 631 states, *inter alia* (a) No person shall:

(1)    knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval;

(2)    knowingly make, use, or cause to be used, a false record or statement material to a false or fraudulent claim;

(3)    knowingly present, or cause to be presented, a claim that includes items or services resulting from a violation of 13 V.S.A. chapter 21 or section 1128B of the Social Security Act, 42 U.S.C. §§ 1320a-7b;

(4)    knowingly present, or cause to be presented, a claim that includes items or services for which the State could not receive payment from the federal government due to the operation of 42 U.S.C. § 1396b(s) because the claim includes designated health services (as defined in 42 U.S.C. § 1395nn(h)(6)) furnished to an individual on the basis of a referral that would result in the denial of payment under 42 U.S.C. chapter 7, subchapter XVIII (the "Medicare Program"), due to a violation of 42 U.S.C. § 1395nn;…

(8)    enter into a written agreement or contract with an official of the State or its agent knowing the information contained therein is false;

(9)     knowingly make, use or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State;…

(10)    knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the State;

(11)    as a beneficiary of an inadvertent submission of a false claim to the State, or as a beneficiary of an overpayment from the State, and who subsequently discovers the falsity of the claim or the receipt of overpayment, fail to disclose the false claim or receipt of overpayment to the State by the later of: (A) a date which is 120 days after the date on which the false claim or receipt of overpayment was identified; or (B) the date any corresponding cost report is due, if applicable; or

(12)    conspire to commit a violation of this subsection.

498.    Defendants violated 32 V.S.A. § 631 when they knowingly caused false claims to be made, used and presented to the State of Vermont by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

499.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

500.    The State of Vermont, by and through the Vermont Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

501.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Vermont.  Had the State of Vermont known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

502.    As a result of Defendants' violations of 32 V.S.A. § 631, the State of Vermont has been damaged.

503.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to 32 V.S.A. § 633 on behalf of himself and the State of Vermont.

504.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Vermont in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXVII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF VERMONT:

(1)    A civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of subsection (a) of this section, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461);

(2)    three times the amount of damages that the State sustains because of the act of that person; and

(3)    the costs of the investigation and prosecution of such violation;

(4)    Pre-judgment interest; and

(5)    All costs incurred in bringing this action.

To RELATOR:

(13)  A fair and reasonable amount allowed pursuant to 32 V.S.A. § 635 and/or any other applicable provision of law;

(14)  Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(15)  An award of statutory attorneys' fees and costs; and

(16)  Such further relief as this Court deems equitable and just.

**COUNT XXXVIII**
**VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT**
**VA. CODE ANN. § 8.01-216.1 *et seq.***

505.    Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

506.    This is a *qui tam* action brought by John Doe and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Medicaid Fraud Prevention Law, VA. CODE ANN. § 8.01-216.1 *et seq.*

507.    VA. CODE ANN. § 8.01-216.3 provides liability for any person who, *inter alia*:

(1)  Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2)  Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)  Conspires to commit a violation of [this section]

508.    Defendants violated VA. CODE ANN. § 8.01-216.3 when they knowingly caused false claims to be made, used and presented to the Commonwealth of Virginia by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were

138

deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

509.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

510.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

511.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the Commonwealth of Virginia. Had the Commonwealth of Virginia known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

512.    As a result of Defendants' violations of VA. CODE ANN. § 8.01-216.3, the Commonwealth of Virginia has been damaged.

513.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to VA. CODE ANN. § 8.01-216.5 on behalf of himself and the Commonwealth of Virginia.

514.    This Court is requested to accept pendant jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the Commonwealth of Virginia in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXVIII

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the COMMONWEALTH OF VIRGINIA:

(1) Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendants' fraudulent and illegal practices;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants to be presented to the Commonwealth of Virginia;

(3) Pre-judgment interest; and

(4) All costs incurred in bringing this action.

To RELATOR:

(1) A fair and reasonable amount allowed pursuant to VA. CODE ANN. § 8.01-216.7 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3) An award of statutory attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXXIX
## VIOLATIONS OF THE WASHINGTON STATE MEDICAID FRAUD
## FALSE CLAIMS ACT
### WASH. REV. CODE ANN. § 74.66.010 *et seq.*

515. Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety. and said allegations are incorporated herein by reference.

516. This is a *qui tam* action brought by John Doe and the State of Washington to recover treble damages and civil penalties under the Washington State Medicaid Fraud False Claims Act, WASH. REV. CODE ANN. § 74.66.010 *et seq.*

140

517.    WASH. REV. CODE ANN. § 74.66.020 provides liability for any person who, *inter alia*:

(1)    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3)    Conspires to commit one or more of the violations in this subsection.

518.    Defendants violated WASH. REV. CODE ANN. § 74.66.020 when they knowingly caused false claims to be made, used and presented to the State of Washington by their violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

519.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

520.    The State of Washington, by and through the Washington Virginia Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

521.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Washington. Had the

State of Washington known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

522.    As a result of Defendants' violations of WASH. REV. CODE ANN. § 74.66.020, the State of Washington has been damaged.

523.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to WASH. REV. CODE ANN. § 74.66.050 on behalf of himself and the State of Washington.

524.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Washington in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXIX

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants, respectively:

To the STATE OF WASHINGTON:

 (1) Three times the amount of actual damages which the State of Washington has sustained as a result of Defendants' fraudulent and illegal practices;

 (2) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants to be presented to the State of Washington;

 (3) Pre-judgment interest; and

 (4) All costs incurred in bringing this action.

To RELATOR:

 (1) A fair and reasonable amount allowed pursuant to WASH. REV. CODE ANN. § 74.66.070 and/or any other applicable provision of law;

142

(2)     Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

(3)     An award of statutory attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXXX
## VIOLATIONS OF THE WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT
### WIS. STAT. ANN. § 20.931 *et seq.*

525.     Relator restates and realleges the allegations contained in the preceding paragraphs as if each were stated herein in their entirety, and said allegations are incorporated herein by reference.

526.     This is a *qui tam* action brought by John Doe and the State of Wisconsin to recover treble damages and civil penalties under the Wisconsin State Medicaid Fraud False Claims Act, WIS. STAT. ANN. § 20.931 *et seq.*

527.     WIS. STAT. ANN. § 20.931(2) provides liability for any person who, *inter alia*:

(1)     Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

(3)     Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

528.     Defendants violated WIS. STAT. ANN. § 20.931(2) when they knowingly caused false claims to be made, used and presented to the State of Wisconsin by their

143

violations of Federal and State laws by submitting false or fraudulent claims for payment for prescription drugs, products, or services to which they were not entitled. Defendants knew that these claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of the claims, or acted in reckless disregard for whether the claims were true or false.

529.    Each claim presented or caused to be presented for reimbursement of the prescription drugs, products, or services challenged herein represents a false or fraudulent claim for payment under the FCA.

530.    The State of Wisconsin, by and through the Wisconsin Medicaid program and other State health care programs, was unaware of Defendants' fraudulent and illegal practices and paid the claims submitted by Defendants in connection therewith.

531.    Compliance with applicable Medicaid and various other Federal and State laws was a condition of payment of claims submitted to the State of Wisconsin. Had the State of Wisconsin known that Defendants violated the laws cited herein, it would not have paid the claims submitted by Defendants.

532.    As a result of Defendants' violations of WIS. STAT. ANN. § 20.931(2), the State of Wisconsin has been damaged.

533.    John Doe is a private person with direct and independent knowledge of the allegations of the Original Complaint, who has brought this action pursuant to WIS. STAT. ANN. § 20.931(5) on behalf of himself and the State of Wisconsin.

534.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of Wisconsin in the operation of the Medicaid program.

## PRAYER AS TO COUNT XXXX

WHEREFORE, Relator respectfully requests this Court to award the following

damages to the following parties and against Defendants, respectively:

To the STATE OF WISCONSIN:

    (1)    Three times the amount of actual damages which the State of Wisconsin has sustained as a result of Defendants' fraudulent and illegal practices;

    (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants to be presented to the State of Wisconsin;

    (3)    Pre-judgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    A fair and reasonable amount allowed pursuant to WIS. STAT. ANN. § 20.931(11) and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which John Doe incurred in connection with this action;

    (3)    An award of statutory attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Relator demands trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure and the Seventh Amendment to the U.S. Constitution.

Respectfully submitted,

_____
Andrew M. Beato (DC Bar No. 469097)
ABeato@steinmitchell.com
Jed Wulfekotte (DC Bar No. 977671)
JWulfekotte@steinmitchell.com
Melissa Sussman Fox (NY Bar No. 4507729)
MFox@steinmitchell.com
Kevin L. Attridge (DC Bar No. 1012349)
KAttridge@steinmitchell.com
STEIN MITCHELL BEATO & MISSNER LLP
901 15th Street, N.W.
Suite 700
Washington, D.C.  20005
(202) 737-7777 (telephone)
(202) 296-8312 (fax)

_____
Kevin N. Colquitt (Texas Bar No. 24072047)
knc@sbaitilaw.com
SBAITI & COMPANY, PLLC
2200 Ross Avenue, Suite 4900W
Dallas, Texas 75201
(214) 432-2899 (telephone)
(214) 853-4367 (fax)

***Counsel for Relator***

December 4, 2019

146

## CERTIFICATE OF SERVICE

I certify that on this 4th day of December 2019, a true and correct copy of the

foregoing Complaint was filed under seal with the Clerk of Court. Service of this Complaint

shall be made to the following parties listed below by U.S. Certified Mail, Return Receipt

Requested:

| | |
|---|---|
| The Honorable William P. Barr<br>United States Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | Jessica Hu<br>Assistant United States Attorney<br>United States Attorney's Office<br>86 Chambers Street / Third Floor<br>New York, NY 10007 |
| Leslie Rutledge<br>Attorney General of Arkansas<br>323 Center Street, Suite 200<br>Little Rock, AR 72201 | Lloyd Warford<br>Director, Medicaid Fraud Control Unit of<br>Arkansas<br>Office of the Attorney General<br>323 Center Street, Suite 200<br>Little Rock, AR 72201 |
| Xavier Becarra<br>Attorney General of California<br>California Department of Justice<br>Attn: False Claims Unit<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 | Saralyn M. Ang-Olson<br>Director, Bureau of Medi-Cal Fraud and Elder<br>Abuse<br>Office of the Attorney General<br>2329 Gateway Oaks Drive, Suite 200<br>Sacramento, CA 95833 |
| Phil Weiser<br>Attorney General of Colorado<br>Colorado Department of Law<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 | Robert Booth<br>Director, Medicaid Fraud Control Unit<br>Office of the Attorney General<br>Colorado Department of Law<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 9th Floor<br>Denver, CO 80203 |
| William Tong<br>Attorney General of Connecticut<br>55 Elm Street<br>Hartford, CT 06106-1774 | Christopher Godialis<br>Director, Medicaid Fraud Control Unit of<br>Connecticut<br>Office of the Chief State's Attorney<br>300 Corporate Place<br>Rocky Hill, CT 06067 |

| | |
|---|---|
| Kathy Jennings<br>Attorney General of Delaware<br>Delaware Department of Justice<br>Carvel State Office Bldg.<br>820 N. French St.<br>Wilmington, DE 19801 | Christina Kontis<br>Director, Medicaid Fraud Control Unit of<br>Delaware<br>Office of the Attorney General<br>820 N. French St., 5th Floor<br>Wilmington, DE 19801 |
| Karl A. Racine<br>Attorney General for the District of Columbia<br>441 4th Street, NW<br>Washington, DC 20001 | Acting Director, MFCU<br>Medicaid Fraud Control Unit of D.C.<br>Office of D.C. Inspector General<br>717 14th Street N.W., 5th Floor<br>Washington, DC 20005 |
| Ashley Moody<br>Attorney General of Florida<br>PL-01, The Capitol<br>Tallahassee, FL 32399-1050<br><br>Jimmy Patronis, Chief Financial Officer<br>Florida Department of Financial Services<br>200 East Gaines Street<br>Tallahassee, FL 32399 | Kathleen Von Hoene<br>Interim Director, Medicaid Fraud Control Unit<br>of Florida<br>Office of the Attorney General<br>PL-01, The Capitol<br>Tallahassee, FL 32399-1050 |
| Christopher Carr<br>Attorney General of Georgia<br>40 Capitol Square SW<br>Atlanta, GA 30334-1300 | Van Pearlberg<br>Director, Medicaid Fraud Control Unit of<br>Georgia<br>200 Piedmont Ave., SE<br>West Tower, 19th Floor<br>Atlanta, GA 30334 |
| Clare E. Connors<br>Attorney General of Hawaii<br>Department of the Attorney General<br>425 Queen Street<br>Honolulu, HI 96813 | Dawn S. Shigezawa<br>Director, Medicaid Fraud Control Unit of<br>Hawaii<br>Department of the Attorney General<br>727 Richards Street, Suite 402<br>Honolulu, HI 96813 |
| Kwame Raoul<br>Attorney General for the State of Illinois<br>James R. Thompson Center<br>100 W. Randolph Street<br>Chicago, IL 60601 | Legal Department<br>Illinois State Police Medicaid Fraud Control<br>Bureau<br>801 South 7th Street, Suite 500-A<br>Springfield, IL 62703 |
| Curtis Hill<br>Attorney General of Indiana<br>Office of the Indiana Attorney General | Matthew Whitmire<br>Director, Medicaid Fraud Control Unit of<br>Indiana |

| | |
|---|---|
| Indiana Government Center South<br>302 W. Washington St., 5th Floor<br>Indianapolis, IN 46204 | Office of the Attorney General<br>8005 Castleway Drive<br>Indianapolis, IN 46250-1946 |
| Tom Miller<br>Attorney General of Iowa<br>Office of the Attorney General of Iowa<br>Hoover Building<br>1305 E. Walnut Street<br>Des Moines, IA 50319 | Jeremy Ingrim<br>Director, Medicaid Fraud Control Unit of Iowa<br>Department of Inspections and Appeals<br>3rd Floor, Lucas State Office Building<br>321 E. 12th Street<br>Des Moines, IA 50319 |
| Jeff Landry<br>Attorney General of Louisiana<br>1885 N. Third Street<br>Baton Rouge, LA 70802 | Lacey Hebert<br>Director, Medicaid Fraud Control Unit of<br>Louisiana<br>Office of the Attorney General<br>1885 N. 3rd Street<br>Baton Rouge, LA 70802 |
| Brian Frosh<br>Attorney General of Maryland<br>200 St. Paul Place<br>Baltimore, MD 21202 | Strider L. Dickson<br>Director, Medicaid Fraud Control Unit of<br>Maryland<br>Office of the Attorney General<br>200 St. Paul Place, 18th Floor<br>Baltimore, MD 21202 |
| Maura Healey<br>Attorney General for the Commonwealth of<br>Massachusetts<br>One Ashburton Place<br>Room 1813<br>Boston, MA 02108-1518 | Toby Unger<br>Director, Medicaid Fraud Control Unit of<br>Massachusetts<br>Office of the Attorney General<br>One Ashburton Place, Room 1813<br>Boston, MA 02108-1698 |
| Dana Nessel<br>Attorney General of Michigan<br>G. Mennen Williams Building, 7th Floor<br>525 W. Ottawa Street<br>P.O. Box 30212<br>Lansing, MI 48909 | David Tanay<br>Director, Health Care Fraud Division<br>Office of the Attorney General<br>2860 Eyde Parkway<br>East Lansing, MI 48823 |
| Keith Ellison<br>Attorney General of Minnesota<br>Bremer Tower, Suite 1400<br>445 Minnesota Street<br>St. Paul, MN 55101-2131 | Kirsi L. Poupore<br>Director, Office of the Attorney General of<br>Minnesota<br>Bremer Tower, Suite 900<br>445 Minnesota Street<br>St. Paul, MN 55101-2219 |

| | |
|---|---|
| Tim Fox<br>Attorney General of Montana<br>Justice Bldg., Third Floor<br>215 N. Sanders<br>P.O. Box 201401<br>Helena, MT 59620-1401 | Debrah Fosket<br>Director, Medicaid Fraud Control Unit of<br>Montana<br>Division of Criminal Investigation<br>2225 11th Avenue<br>P.O. Box 201417<br>Helena, MT 59620-1417 |
| Aaron Ford<br>Attorney General of Nevada<br>Office of the Attorney General<br>100 N. Carson St.<br>Carson City, NV 89701 | Mark N. Kemberling<br>Chief, Medicaid Fraud Control Unit of Nevada<br>Office of the Attorney General<br>555 East Washington, Ave., Ste. 3900<br>Las Vegas, NV 89101 |
| Gordon MacDonald<br>Attorney General of New Hampshire<br>NH Department of Justice<br>33 Capitol Street<br>Concord, NH 03301 | Sean P. Gill<br>Director, Medicaid Fraud Control Unit of New<br>Hampshire<br>Office of the Attorney General<br>33 Capitol Street<br>Concord, NH 03301 |
| Gurbir S. Grewal<br>Attorney General of New Jersey<br>RJ Hughes Justice Complex<br>25 Market Street, Box 080<br>Trenton, NJ 08625-0080 | Peter Sepulveda<br>Director, Medicaid Fraud Control Unit of New<br>Jersey<br>Office of the Attorney General<br>One Apollo Drive<br>Whippany, NJ 07981 |
| Hector Balderas<br>Attorney General of New Mexico<br>New Mexico Office of the Attorney General<br>408 Galisteo Street<br>Villagra Building<br>Santa Fe, NM 87501 | ATTN: Medicaid Fraud Control Division<br>New Mexico Office of the Attorney General<br>201 3rd Street N.W., Suite 300<br>Albuquerque, NM 87102 |
| Letitia James<br>Attorney General of New York<br>Office of the New York Attorney General<br>Attn: Managing Clerk's Office<br>28 Liberty Street, 16th Floor<br>New York, NY 10005 | Amy Held<br>Director, Medicaid Fraud Control Unit of New<br>York<br>Office of the Attorney General<br>28 Liberty Street, 13th Floor<br>New York, NY 10005 |

| | |
|---|---|
| Josh Stein<br>Attorney General of North Carolina<br>9001 Mail Service Center<br>Raleigh, NC 27699-9001 | F. Edward Kirby, Jr.<br>Director, Medicaid Fraud Control Unit of North Carolina<br>Office of the Attorney General<br>5505 Creedmoor Road, Suite 300<br>Raleigh, NC 27612 |
| Mike Hunter<br>Attorney General of Oklahoma<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105 | Mykel Fry<br>Director, Medicaid Fraud Control Unit of Oklahoma<br>Office of the Attorney General<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105 |
| Peter Neronha<br>Attorney General of Rhode Island<br>Office of the Attorney General<br>150 South Main Street<br>Providence, RI 02903 | James F. Dube<br>Director, Medicaid Fraud Control Unit of Rhode Island<br>Office of the Attorney General<br>150 South Main Street<br>Providence, RI 02903 |
| Herbert Slattery, III<br>Attorney General and Reporter for Tennessee<br>Office of the Attorney General of Tennessee<br>P.O. Box 20207<br>Nashville, TN 37202-0207 | Mike Cox<br>Director, Medicaid Fraud Control Unit of Tennessee<br>Bureau of Investigation<br>901 R.S. Gass Boulevard<br>Nashville, TN 37216-2639 |
| Ken Paxton<br>Attorney General of Texas<br>ATTN: Susan Miller<br>300 W. 15th Street<br>Austin, TX 78701<br><br>Mailing Address:<br>P.O. Box 12548<br>Austin, TX 78711-2648 | Stormy Kelly<br>Director, Medicaid Fraud Control Unit of Texas<br>Office of the Attorney General<br>6330 E. Highway 290, Suite 250<br>Austin, TX 78723 |
| Sean Reyes<br>Attorney General of Utah<br>Office of the Attorney General<br>Utah State Capital Complex<br>350 North State Street, Suite 230<br>Salt Lake City, UT 84114-2320 | Robert E. Steed<br>Director, Medicaid Fraud Control Unit of Utah<br>Office of the Attorney General<br>5272 College Drive, Suite 300<br>Salt Lake City, UT 84123 |

| T.J. Donovan<br>Attorney General of Vermont<br>Office of the Vermont Attorney General<br>109 State St.<br>Montpelier, VT 05609-1001 | Linda Purdy<br>Director, Medicaid Fraud and Residential Abuse Unit<br>Office of the Vermont Attorney General<br>109 State Street<br>Montpelier, VT 05609-1001 |
|---|---|
| Mark Herring<br>Attorney General of Virginia<br>Office of the Attorney General<br>202 North Ninth Street<br>Richmond, VA 23219 | Randall L. Clouse<br>Director, Medicaid Fraud Control Unit of Virginia<br>Office of the Attorney General<br>202 North Ninth Street<br>Richmond, VA 23219 |
| Bob Ferguson<br>Attorney General of Washington<br>c/o Carrie L. Bashaw, Senior Counsel<br>WA Medical Fraud Control Unit<br>P.O. Box 40114<br>Olympia, WA 98504-0114 | Larissa Payne<br>Director, Medicaid Fraud Control Unit of Washington<br>Office of the Attorney General<br>P.O. Box 40114<br>Olympia, WA 98504-0114 |
| Josh Kaul<br>Attorney General of Wisconsin<br>State Capital, Suite 114 E<br>Madison, WI 53702 | Timothy Samuelson<br>Director, Medicaid Fraud Control and Elder Abuse Unit<br>Office of the Attorney General<br>17 W. Main Street<br>Madison, WI 53703 |

Kevin N. Colquitt

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America ex rel. John Doe, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kevin Colquitt, Sbaiti & Co., PLLC, 2200 Ross Ave. Suite 4900W, Dallas, TX 75201, (214) 432-2889

## DEFENDANTS

Davita, Inc., et al.

County of Residence of First Listed Defendant   Arapahoe County, CO
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

DEC - 4 2019

CLERK, U.S. DISTRICT COURT

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☒ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **LABOR** ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. § 3729, et seq.

Brief description of cause:
False Claims Act case under qui tam provisions re false claims submitted to various federal and state programs

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
12/04/2019

SIGNATURE OF ATTORNEY OF RECORD
*Kevin Colquitt*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____